# THE SUPREME COURT

#### OF

## THE STATE OF MISSOURI,

OCTOBER TERM, 1855, AT ST. LOUIS.

[CONTINUED FROM VOL. XXI.]

---

WOODSON, Respondent, *vs.* SKINNER AND BRECK, Appellants.

1. A power to "*annul* a sale" of a lot in the St. Louis common, made under the authority of "an act to authorize the sale of the St. Louis common," approved March 18, 1835, is substantially pursued by declaring the lot "*forfeited* to the city of St. Louis."

2. The seventh section of the above act provided that the "board" of aldermen of the city of St. Louis might, by resolution, &c., "annul" a sale made under the said act, upon the non-payment of interest due; in a deed of the "mayor, aldermen and citizens of the city of St. Louis," dated March 10, 1836, made under said act, a power was reserved to the "mayor and aldermen" to "annul the sale" upon the non-payment of interest: *held*, that it was the intent of the act that the body in which the legislative power of the city should at the time reside, should annul the sale; that, consequently, a resolution of the city council, consisting of the board of aldermen and board of delegates, (to whom by the act of February 8th, 1839, the legislative power of the city had passed,) approved January 3, 1841, declaring a lot "forfeited to the city of St. Louis, was a good annulment of the sale of said lot."

2—VOL. XXII.

Woodson v. Skinner.

3. The city of St. Louis has a fee simple title to its common, and may, under its charter, pass such a title to a purchaser.
4. There is a marked difference between a forfeiture imposed by a statute and one arising under the contract of parties. In the one case it can not be relieved against; in the other, it may.

## Appeal from St. Louis Land Court.

This was an action, in the nature of an action of ejectment, to recover possession of the south-east quarter of block No. 79, in the St. Louis common. It is alleged in the petition that on the 23d day of June, 1848, the "city of St. Louis," being the owner in fee simple of the above tract of land, conveyed the same to John Laughton and D. H. Armstrong, who, on the 24th day of October, 1849, conveyed to the plaintiff, Woodson. The defendants, in their answer, set up a prior title from the city of St. Louis, under a previous corporate name, and allege that "the mayor and aldermen of the city of St. Louis, claiming the power to dispose of said premises under an act of the general assembly of the state of Missouri, entitled "An act to authorize the sale of the St. Louis common," approved March 18, 1835, by indenture of lease dated March 10, 1836, leased said premises to Nathaniel B. Atwood, for a term of fifty years from date of said lease, which term has not expired. The defendants claim under the said Atwood.

Upon the trial, the plaintiff showed the original title of the inhabitants of St. Louis to the common, which it is unnecessary to set forth here. Plaintiff then introduced in evidence a deed dated June 23d, 1848, from the city of St. Louis, to John Laughton and David H. Armstrong, purporting to convey the premises in controversy in the present suit; also a deed of conveyance of the same premises from the said Laughton and Armstrong to plaintiff, Woodson, dated October 24, 1849. There was evidence tending to show the value of the premises claimed to be $16,000, also tending to show the yearly value of the same. The plaintiff here rested, and the defendant then introduced in evidence a deed, dated March 10, 1836, of the

mayor, aldermen and citizens of St. Louis, (the corporate name at the date of the deed) to Nathaniel B. Atwood ; which deed is as follows : " This indenture, made at the city of St. Louis, Missouri, the 10th day of March, 1836, by and between the mayor, aldermen and citizens of the city of St. Louis, of the county of St. Louis, and state of Missouri, of the one part, and Nathaniel B. Atwood, &c., (of same place) of the other part, to comply with the ninth section of ' An act to authorize the sale of the St. Louis common,' approved March 18, 1835, *witnesseth*, that the mayor, aldermen and citizens of the city of St. Louis, for and in consideration of the rents reserved, &c., have demised, granted and to farm let, and by these presents do demise, grant and to farm let unto the said Atwood, his executors, administrators and assigns, all that lot, messuage or tract of land, situate within the limits of the St. Louis common, in the county aforesaid, containing 9 and 70-100ths acres, and described as follows : The S. E. ¼, block 79, of the survey of the St. Louis common, made by Charles DeWard, by order and direction of the board of aldermen of the city of St. Louis, together with all the rights, members and appurtenances whatsoever thereunto belonging, or in anywise appertaining, and the rent, issues and profits thereof : *To have and to hold* the said lot, messuage and tract of land, and all and singular the premises hereby demised, with the appurtenances, unto the said Atwood, his executors, administrators and assigns, from the date hereof, for and during the term, and upon the condition following, being those prescribed by an act of the general assembly of the state of Missouri, passed March 18, 1835, entitled ' An act to authorize the sale of the St. Louis common.' That is to say :

" 1st. Yielding and paying for the same as a yearly rent, unto the mayor, aldermen and citizens of the city of St. Louis, and their successors, the interest of five per cent. a year on the amount bid for said lot or parcel of ground, being the sum of $36 86, at the expiration of one year from the date of these presents ; and to secure the payment of which a note has been

executed by the said Atwood, and the like sum at the expiration of every year thereafter.

"2d. That at the end of fifty years from the day of sale, being the 8th day of March, 1886, and every fifty years thereafter, and after the assessment made by the public assessor, agreeably to the act of the general assembly above mentioned, the said Atwood shall pay five per centum a year upon such assessed value as a yearly rent.

"3d. That should the interest aforesaid remain unpaid for six months after due, the mayor and aldermen of the city aforesaid may annul the sale, and proceed to sell again, according to the act of the assembly aforesaid.

"4th. That at the expiration of ten years from the day of sale, or at any time after such term, if the annual per cent. aforesaid be duly paid, the said Atwood may pay the sum of $737 20, being the amount bid for the lot aforesaid, and receive a deed in fee simple, with special warranty only against the inhabitants of the city of St. Louis, and all persons claiming under them; and the said Atwood," &c., (here follows a covenant to pay the rent, &c.)

"In witness whereof, the parties aforesaid have executed this deed in duplicate, the mayor of the city of St. Louis and the city register signing their names, and causing the common seal of the city of St. Louis to be affixed to both parts, and the said Atwood signing his name and affixing his seal to both parts of this indenture, on the 10th day of March, 1836.

"JOHN F. DARBY, Mayor.<br>"NATH'L. B. ATWOOD, (seal.)

"J. A. WHERRY, Register, (seal of city.)"

The defendants also gave in evidence a deed from N. B. Atwood to J. W. Skinner, the defendant, assigning to said Skinner a portion of his (Atwood's) interest in the premises. This deed is dated September 6th, 1850.

The plaintiff then in rebuttal introduced Socrates Newman, who testified that he was the register of the city of St. Louis, and that ordinances 766 and 2826, as they appear in the vol-

ume of published ordinances, were duly enrolled on the records of the board of aldermen and board of delegates of the city council. These ordinances were then offered in evidence, and admitted in evidence against objection of defendants. Ordinance 766, approved January 3d, 1041, is as follows:

"A joint resolution providing for the forfeiture and sale of certain lots in the city common.

"Whereas, the parties hereinafter named have failed to comply with the conditions of sale set forth in the conveyances to them made respectively of lots in the city common, viz., being in arrears for more than six months' interest on their respective purchase; and, whereas, by the conveyance made to them, the right of forfeiture is reserved to the city in certain cases therein provided:

"Be it resolved by the city council of the city of St. Louis, that the following described lots in the city common are hereby declared forfeited to the city of St. Louis, viz: (among others) a lot sold to N. B. Atwood, containing nine and $\frac{70}{100}$ acres, being the south-east quarter of block seventy-nine," &c.

There was a further resolution ordering the forfeited lots to be sold again. Ordinance 2826, approved June 19, 1852, is as follows:

"Joint resolution concerning the city common. Whereas, there have been verbal criticisms upon the phraseology of the several resolutions of the board of aldermen annulling the sales of certain lots in the St. Louis common; that any apprehension of subsequent purchasers may be quieted, be it resolved by the board of aldermen and board of delegates of the city of St. Louis, that, inasmuch as the interest or rent reserved to be paid to the mayor, aldermen, and citizens of the city of St. Louis, in the respective deeds made by the mayor, aldermen, and citizens of the city of St. Louis, and the interest or rent reserved to be paid to the city of St. Louis in the deeds made by the city of St. Louis to the purchaser, and for the lots in the St. Louis common hereinafter named, has remained unpaid either

to the mayor, aldermen, and citizens of the city of St. Louis, or the said city of St. Louis, for more than six months after the same became due and payable, which said lot and the names of the purchasers thereof are as follows (among others): a lot sold to N. B. Atwood, containing nine acres and seventy-one-hundredths, being the south-east quarter of block 79.

"Now, therefore, the said several sales of lots in the St. Louis common above named, and to the purchasers above named, are hereby annulled, and are declared null and void."

Plaintiff then introduced Robert Simpson, who testified that he was comptroller of the city of St. Louis in the year 1841, and had the control of the St. Louis common. He knew of the sale of the premises to N. B. Atwood, and that he failed to pay the rent due under the lease to him more than six months after it was due, and that he was actually unable to pay. It was the practice to put the accounts in the hands of a collector, and if they were not paid to put them in suit. He had no doubt it was so done in this case. On cross-examination, witness stated that he had never called on Atwood for the rent, and could not recollect the time when the rent bills were put in the hands of the collector. The court, upon motion of plaintiff, gave the following instruction:

"If the jury find from the evidence that, at the time of the passage of the resolutions offered in evidence, (ordinances Nos. 766 and 2826,) a year's rent or interest, to be paid by N. B. Atwood to the mayor, aldermen and citizens of the city of St. Louis, by virtue of the indenture given in evidence, dated March 10, 1837, was in arrear and had remained unpaid for six months after due, then said sale to Atwood was by said ordinance annulled; and if the jury believe in the genuineness of the instruments by which plaintiff deduces title from the city as read in evidence, they must find for the plaintiff."

To the giving of this instruction, the defendant duly excepted.

An instruction asked for by the defendants was given. Several instructions asked by the defendants were refused by the

court. It is unnecessary to set these forth, as all the questions of law discussed arise upon the giving of the instruction above set forth. There was a verdict and judgment for plaintiff, and defendants appealed.

*J. W. Skinner,* for self and other defendants, appellants. 1. The lease to Atwood was not annulled by ordinances 766 and 2826. The act of March 18, 1835, authorized a lease. From an examination of the character of the act, we may see that the prominent features take rightly a leasehold character. The subject of the act—commons—are not properly or generally subjects of sale. (See Bac. Abr. tit. Common.) The object of the act was to provide a yearly fund for the support of schools. Though styled "An act to authorize a sale," &c., it in part authorizes only a sale to fix the rent, or a contract to sell, whereby at a public auction the bidder states what sum he may pay in ten years or more. He is forbidden to pay under ten years, and he is not bound to pay it any time. He is to enter into covenant to pay rent for fifty years, and on a re-assessment after fifty years to pay a rent on the re-assessment. These peculiar and remarkable features of the act show that the prime object was not to sell, in order to transfer the absolute property, but to make the sale a means of ascertaining the amount of rent to be paid. The indenture of March 10, 1836, vested a leasehold in Atwood. It is not a deed of conveyance upon a sale; no words of conveyance, or covenant for the conveyance of a fee are to be found in it. It merely gives permission to receive a deed of conveyance in the future. The words used are "demised, grant and to farm let." These are the operative words of a lease. The term extends to fifty years certainly; and if the provision concerning the extension is valid, for fifty years longer, at least, subject to re-assessment. If that provision be pronounced invalid, it is limited to fifty years.

In Plowd. 271, " a lease for ten years, lessee to pay in tiles at the end of every ten years, and have a perpetual demise of the premise, from ten years to ten years, forever; it was held

that it was a good lease for ten or twenty years, and that if the condition had been properly worded, it would have made a good perpetual demise." Bac. Ab. Leases, 633, 835, 890. Thus the indenture has all the qualities of a good lease, and none of a conditional sale.

" In a lease to a man for eight years, rendering rent yearly, and if he should hold over to have the fee to him and his heirs forever, on covenant for rent brought within eight years : held, it was a lease and not a conditional fee." Plowd. 271.

" When a lease is made by A. to B. for five years, with the privilege of a fee on paying a certain sum in two years," this is held by Littleton to be " a lease united to a conditional fee, *pro tempore*." Plowd. 271, Co. Litt. II. p. 11. This decision is misquoted and misapplied (18 John. 174). See City of St. Louis *v.* Morton, (6 Mo. Rep. 480). If this indenture is a conditional deed, the law of forfeiture is still applicable, so far as the lease extends, and the forfeiture must be taken in the same way. (18 John. 174.) The city had power to make the lease. (13 Mo. 606.) The leasehold interest of Atwood can be divested against his will only by forfeiture or ejectment. As there is an interest in possession under the lease, and an interest in future under the permission to receive a deed, which are entirely separable, so the penalties are separable which affect either of them. A penalty may be imposed by which, under certain contigencies, our right to the fee may be cut off, yet leave the lease good. If the city intends to annul the sale, it must proceed in the manner directed in the act. If it would forfeit our lease (the act and deed being silent) it must proceed according to law. The common law requires, as necessary to a forfeiture, a demand of the rent, on the ground, at the last hour of the last day. (Dumfries' case, 4 Coke, 119 ; 1 Saund. 287 ; Cowp. 804 ; 17 Johns. 66 ; 1 How. 211.) Our statute requires an action of ejectment by landlord as a substitute for the demand under the common law. Neither of these is claimed to exist in this case. Ordinances 766 and 2826 did not affect the leasehold interest created by the inden-

ture of March 10, 1836. The first attempted it in vain. The second did not attempt to affect it. The right of " forfeiture" is not reserved to the city of St. Louis. The city council and the city of St. Louis are strangers to our contract. The forfeiture claimed is exercised under an assumed power to forfeit reserved in the deed. If no power to forfeit is found in the deed, the forfeiture is invalid. The power to annul the sale is not a power to forfeit. ·The power to annul the sale was given by the act of March 10, 1835, to the " mayor and aldermen," and not to the corporation. No mention is made of a power to their successors. The charter under which they acted as the agent of the corporation was extinguished February 8th, 1839. In this new charter there is no reservation of the power to annul the sales made by the " mayor and aldermen." See Charleton R. 342. Ordinance 2826, if operative at all, affects only whatever interest, right or contract we have for the fee. It leaves the lease, under which alone we claim, unaffected and unimpaired. The city authorities may have meant to forfeit the lease, but did not adopt apt means to accomplish their object. This ordinance was passed without any demand of rent, and without notice to those claiming under the indenture of March 10, 1836; also long after the conveyance to Laughton and Armstrong, on June 23, 1848. 2. The annulment of the sale to Atwood did not revest a fee simple in the city of St. Louis. It was not proven that the city, before the sale to Atwood, was the absolute owner of the premises in fee simple. (Reily v. Chouquette, 18 Mo. 225; see also 1 McLean, 41; 6 Wheat. 597; 2 Kent's Com. 277, 262; 1 Black. Com. 475; Co. Litt. 2; 1 Hallam's Mid Ages, 165; 6 Mo. 524, 481; 11 Mo. 150; 13 Mo. 611, 431; 6 N. H. 269.) 3. The verdict of the jury as to damages was not sustained by the evidence.

*B. Bates,* for respondent.

SCOTT, Judge, delivered the opinion of the court.

The main point in the argument for appellants was founded in the conception, that the deed which has given rise to this

controversy was similar as to the estate or interest conveyed by it to that conveyed by the indenture in the case of Say *v.* Smith, Plowden, 271. It is only necessary to look at that case in order to be satisfied that this is a misconception. In the case cited, the lease is only for the term of ten years fully to be complete. The lessee agreed at the end of the said term, to pay ten thousand tiles, or the value thereof in money; and it was further agreed, that if the ten thousand tiles should be punctually paid at the end of every ten years, the lessee should have a perpetual demise. In that case, the judges take the distinction between a conditional lease and condition to have a lease, and in that distinction consists the difference between the case under consideration and of Say *v.* Smith.

We do not deem it necessary to enter into any discussion as to the proper name of the instrument executed by the authorities of the city of St. Louis to N. B. Atwood, under whom the appellants claim. The instrument was effectual to convey away all the interest the city had in the premises in dispute, and a compliance with its terms on the part of the lessee and his assigns, would have effectually barred all right the city might have had in the lot. It is true, there were conditions annexed in the instrument on the performance of which the lessee or his assigns would have been entitled to an estate in fee. But these conditions constituted no separate and distinct estate; they were mere incidents to the lease or sale, and would naturally terminate with it. Any act which avoided or annulled the lease would destroy all conditions annexed to it.

How, then, does this case stand? The instrument under which the appellants claim, purports to have been made in compliance with the ninth section of the act of the *general* assembly, entitled "An act to authorize the sale of the St. Louis commons," approved March 18, 1835. This instrument is a substantial compliance with the act. It is, in effect, a perpetual lease, with a privilege in the lessee to convert it into an estate in fee, by complying with the conditions contained in the instrument of lease. There is also a clause in the deed by

which the mayor and aldermen of the city are authorized to annul the sale upon the non-payment of interest on the purchase money as stipulated.    This clause is inserted in virtue of an express provision in the act of assembly empowering the city to sell her commons.    Now, admitting this was strictly a lease, there is an error in supposing that the city could only enforce a forfeiture of it by the course of the common law. The city, in leasing her commons, did not act of her mere volition as an individual proprietor would in leasing lands belonging to him.    She acted under a law of the state, and that law expressly empowered her to enforce the performance of the conditions of the lease by means of a forfeiture.    The case is as though the general assembly had declared that the lease should be forfeited in the event of non-payment of the interest on the purchase money.    There is a marked difference between a forfeiture imposed by a statute and one arising under the contract of the parties.    The legislature can impose it as a punishment, whilst individuals can only make it a matter of contract.    In the one case it can not be relieved against, in the other it may. In the one case it may be taken advantage of in the manner prescribed by the law imposing it, in the other only according to the course of the common law.    (How. 3 U. S. Rep. 534.)

The right to enforce a forfeiture or annulment of the lease being conferred by an act of the general assembly, which can not be relieved against, it remains to be inquired into, whether the appropriate steps were taken by the city authorities to carry it into effect.    Whilst courts will not incline to forfeitures, yet when a right to exact forfeiture is given, they should not withhold a reasonable construction from the written instruments by which they are designed to be enforced.    Taken in connection with the facts, it is impossible to place any other interpretation on ordinance 766 than that which will make it effectual for the purpose for which it was intended.    The objections to the ordinance are verbal.    There is no force in them.    No one can read the ordinance in connection with the deed or conveyance and entertain any doubt as to its meaning.    The right reserved

in the deed is to *annul* the sale. The ordinance declares it *forfeited* for the non-performance of the very act, for the non-performance of which it may be annulled. It is not pretended that there was more than one deed or conveyance between the parties respecting this lot. " Annul" is not a technical word. There is nothing which prevents the idea conveyed by it from being expressed in equivalent words. The annuling of a lease is nothing more in effect than causing a forfeiture of it. The recital in the preamble to the ordinance, that the right of forfeiture is reserved to the city, can not affect its validity. It means nothing more than that the right of forfeiture is reserved for the benefit of the city. Besides, if this was an error, it could produce no harm. If the right of forfeiture was enforced by the authority empowered to do it, a mis-recital of the authority to whom it was reserved could work no wrong. There are several other criticisms on the language of the ordinance which we do not deem it necessary to notice.

The view we have taken of ordinance 766 relieves us of the necessity of saying any thing in relation to ordinance 2826, not intending thereby to detract any thing from the weight to which it is entitled.

The change of the name of a corporation does not affect its rights. In its new name, a corporation may proceed to enforce rights acquired under a former name, and the same remedy is open to those who had claims upon it before the change. A corporation which has been suspended by the loss of the governing members may be revived by a name different from that by which it was formerly known, still preserving its identity and ancient rights. (Willock, 36.)

The act of 18th March, 1835, under which the sale or lease was made, took effect on the 1st December, 1835. On the 26th February, 1835, an act was passed conferring a new charter on the city by the name and style of the " mayor, aldermen and citizens of the city of St. Louis." This act, too, it would seem, took effect on the first December, 1835. The name of the incorporation given by this act is the same by which the

city stood incorporated before its passage.   By an act approved February 8th, 1839, the city received a charter by which she was incorporated under the name and style of " the city of St. Louis."   This act changed the former charters and vested the legislative power in a city council, consisting of a board of aldermen and a board of delegates.   Ordinance 766 was passed under this last charter, and it purports to have been passed by the city council.   Now, it is maintained that, inasmuch as the deed requires that the act of annulment should be made by the mayor and aldermen, the ordinance or resolution made by the city council, declaring a forfeiture, is ineffectual for that purpose.   The act under which the commons were sold or leased, directed that the deed should contain a condition to the effect that if the interest on the purchase money remained unpaid for six months, the *board* might, by resolution to be entered of record on the minutes of their proceedings, annul the sale of any lot which was delinquent.   This is the act.   Its meaning and purpose are obvious.   That meaning was not changed by transferring the words of the law into the contract.   The idea intended was that the body in which the legislative power of the city resided should annul the sale.   It never was contemplated that the organization of the legislative power of the corporation should forever remain unchanged, in order that advantage might be taken of the condition.   Suppose that after all legislative power had been taken by charter from the board and vested in another body, and the charter had provided that two men should be a board of aldermen, with no legislative powers or duties whatever, would the annulment of the sale by such a board be within the spirit or meaning of the condition ?   The concurrence of the mayor in the act, if it were conceded that his consent was not required, can not prejudice the vendee or lessee. As his action is separate and independent of the board, the requiring of his concurrence is an advantage to the vendee of which he can not complain.   To obtain the joint concurrence of two separate bodies to an act, is more difficult than to obtain the consent of one of those bodies ; besides, if the resolution,

without his approval, was sufficient, the putting his signature to it could not affect its validity.

What has been said in relation to the change of names of corporations, is an answer to the objection that, in the new charter of 1839, under which ordinance 766 was passed, there was no reservation of the power to annul the sales made by the mayor and aldermen. In addition to this, the seventh and eighth sections of the seventh article of the charter of 1839 are sufficient to preserve all rights belonging to the city under former charters.

Another point made by the appellants was, that the annulment of the sale to Atwood did not revest a fee simple in the lot in the city of St. Louis ; that such an effect could not be produced unless the city had been the owner before the annulment. The case of Swartz v. Page, (13 Mo. 610,) certainly goes on the idea that the city had power to convey a fee simple title to the commons. In the case of DuBois v. Bramell, (4 How. U. S. Rep. 458,) the court says : " In January, 1831, the city of St. Louis and other towns applied to have their rights of common further confirmed and regulated, and an act of congress was passed declaring that the United States do hereby relinquish to the inhabitants of the several towns of St. Louis, &c., all right, title and interest in and to the town or village lots, out-lots, common-field lots and commons, to be held by the inhabitants of the said towns in ' full property,' and to be regulated or disposed of for the use of the inhabitants according to the laws of the state of Missouri. This law vested in the city corporation the town common in fee simple, and gave full power to the legislature of Missouri to incorporate it into the city by extending the city charter over it." The right of congress to pass any law affecting the right to commons, after the act of 1812, has been questioned ; but this exercise of power has its foundation, it is presumed, in the nature of commons. The right to commons in the inhabitants was not inconsistent with the idea of a fee in the sovereignty under which they existed. The words " in full property," in

the act above cited, seem to show that such was the opinion entertained by its authors.   The act of 18th March, 1835, was passed in pursuance to this act of congress by the legislature of Missouri, to enable the city to dispose of her commons.

There was an admission in the answer that the lot was culti-vated, and that one of the defendants lived upon it.   Under these circumstances, the amount of the damages was exclusively for the jury.

Judgment affirmed, the other judges concurring.