EMMA L. SCHICKHAUS

*v.*

MARGARET J. SANFORD.

[Decided August 21st, 1914.]

1. *3 Comp. Stat. 1910 p. 3226 § 5*, declaring that contracts of a married woman shall be enforceable in equity as if she were a *feme sole*, is qualified by section 14, declaring that a married woman may not execute any conveyance of her real property or any instrument encumbering the same without her husband's joinder.

2. Restrictions, in a general plan adopted by the owner to sell lots, may in equity be imposed on the lands beyond the express restrictions contained in the deeds to the purchaser, on the theory of implied covenant.

3. *3 Comp. Stat. 1910 p. 3226 § 5* declares that contracts of a married woman shall be enforceable in equity as though she were sole, and section 14 provides that a married woman may not execute any conveyance or encumbrance on her real property without her husband's joinder. —*Held*, that section 14 related only to the character of conveyances and instruments by which a married woman's real property might be conveyed or encumbered, and did not restrict the power of a wife, under section 5, to make contracts, express or implied, with reference to the improvement of real property which would be enforced in equity, though not created by conveyance or other instrument.

4. Where a husband and wife, owning a tract of land by the entirety, laid it out in building lots according to a general plan, imposing limitations on the use of the land as building lots and restrictions intended to secure the erection of first-class one-family residences on the tract, and the husband sold complainant a lot, with reference to the plan, which showed that certain other lots were abutting and subject to such restrictions, the wife after the death of her husband, and becoming a *feme sole*, was liable to complainant for the performance of the limitations and restrictions with reference to the adjoining property as an implied covenant, though all of the restrictions and limitations were not specified in complainant's deed.

On motion to strike out for want of equity.

*Mr. William C. Headley*, for the motion.

*Mr. Ernest F. Keer*, contra.

EMERY, V. C.

The facts set out in the bill substantially show that one Sanford and his wife, being the owners by the entirety of a large tract of land in Newark, laid out the same for sale in building lots according to a general and uniform plan relating to the limitations made upon the use of said lands as building lots, and with restrictions, intended to secure the erection of first-class one-family residences on the tract.

The bill also shows specially as to the lot which was purchased by the complainant's predecessor in title, that according to the general plan as declared by the owners, appearing by the map adopted by the owners, complainant's lot was to be a lot fifty feet by about one hundred feet in depth, located on Sanford avenue, one of the three streets laid out through the tract, and abutted on two lots fronting on Clinton avenue, each about fifty feet in width and one hundred and seventy-five feet in depth. According to the general plan, as alleged in the bill, these two lots were to be sold together as a lot fronting one hundred feet on Clinton avenue and one hundred and seventy-five feet deep. Complainant's lot was purchased, relying on the existence of this map and plan making the adjoining lots abutting lots, and upon the special representation by the owners that these lots on Clinton avenue were to be sold as abutting lots and as thus shown on the map then produced for the purpose of inducing complainant's purchase of the adjoining lot—the price of which as then agreed on was increased by reason of this adjacency to the abutting lots. But the deed for complainant's lot, which is also set out in the bill, while it referred to the lot as being No. 22 on the map, did not contain any express restriction or covenant on the part of the grantors that the adjoining lots should be sold as abutting lots as shown on the map. It did, however, contain express restrictions as to the character and use of the building to be erected by complainant upon the lot conveyed, its distance from the curb line, its cost, and also contained a covenant on behalf of the husband (in which the wife did not join) that no stable should be erected or placed on the lands lying south of and adjoining the lots conveyed (being the abutting lots) within forty feet of the dwelling-house to be erected

on the premises conveyed. The wife herself made no express covenant by the deed in relation to the adjoining lots.

Complainant's predecessor in title, as her bill states, refused to accept this deed, because she desired further and more explicit assurances that the building plan or scheme would be carried on in respect to the lot conveyed being an abutting lot, and thereupon Mr. Sanford wrote the following letter:

"In regard to the sale of lot 22 on map of my property (being complainant's lot) in answer to your request of me to my intentions in regard to my other property lying between the lot conveyed by me to you and Clinton avenue (the abutting lots), state that my intention is to sell all my property under restrictions, and the lots lying between your lot and Clinton avenue, in two lots or plots only, and if a stable be allowed on either of said lots that the same be placed on the dividing or central line of the lots and at least forty feet from any dwelling-house erected by you."

This letter was not signed by Mrs. Sanford, who has survived her husband, and is now the sole owner of the unsold portions of the tract. Since her husband's death she has, as the bill alleges, repudiated any obligation to observe the assurances of the letter in reference to the method of sale of the lots, and has (among other acts) offered the rear portion of the lots abutting on complainant's lot for sale as a single lot fronting on the same street with complainant, and as an adjoining lot. If this change should be carried out and a dwelling be erected adjoining complainant's lot, it would deprive complainant of certain advantages of light, air and access which she claims the right to enjoy as the owner of a residence on abutting lots. The bill is filed to establish and enforce the restriction claimed to have been imposed by the owners on the sale of these Clinton avenue lots by the general building plan as declared and announced by the husband and made in connection with the sale by reference to the map, and to require these adjoining lots to be sold as abutting lots.

A motion to strike out the bill for want of equity is made, and the reason mainly relied on at the argument is that no contract or agreement in reference to the sale of the lots as abutting lots enforceable against Mrs. Sanford appears in the bill. It is claimed that the alleged building plan set out in the bill appears

to have been made or joined in by her while she was a married woman and while holding an estate in entirety with her husband; and that in the absence of any deed or conveyance imposing the equitable burden or restrictions on her remaining lands, she is not, as the owner of the entire estate after her husband's death, bound by such plan made during the coverture and during the continuance of the estate by the entirety.

The Married Women's act (*Comp. Stat. p. 3226 ¶ 5*) makes the contracts of a married woman enforceable in equity as if she were a *feme sole,* but the subsequent section of the same act (*Ibid. 3237 ¶ 14*) qualifies the effect of this section by providing that it shall not enable a married woman to execute any conveyance of her real estate or any instrument encumbering the same, without her husband's joining therein, as heretofore.

The husband, in the deed conveying complainant's lot, entered into an express covenant restricting the character and use of the adjoining lots, but in this covenant the wife did not join, nor did the covenant entered into by the husband expressly restrict the sale as an adjoining lot, or the erection of any building other than a stable within forty feet of the dwelling-house to be erected on the purchaser's lot. The husband did, however, by his letter set out in the bill, impliedly, if not expressly, agree that the lots in question should be abutting lots, and procured the sale and the acceptance of the deed for the purpose of erecting a dwelling-house on the faith of this assurance. It is not claimed that the wife's estate after her husband's death is bound by this letter as a contract on her part, and under the decisions, it could not be encumbered by the husband's sole agreement. *Washburn* v. *Burns, 34 N. J. Law 18; Servis* v. *Dorn (Vice-Chancellor Walker, 1909), 76 N. J. Eq. 241; 2 Kent Com. 133.* It is claimed, however, that she is bound in equity to observe these restrictions by reason of the general building plan imposed and adopted by both of them in connection with the map referred to in the deed, which showed the lots as abutting lots and the representations relative thereto at the time of the purchase.

Restrictions under a general plan adopted by the owner for the purpose of selling lots may, in equity, be imposed upon lands of the owner extending beyond the express restrictions contained in

the deeds to a purchaser, and on the doctrine of implied covenants. *Lennig* v. *Ocean City Association* (*Court of Errors and Appeals*), *41 N. J. Eq. 606, 608; Herold* v. *Columbia Investment Co.* (*Court of Errors and Appeals, 1907*), *72 N. J. Eq. 857, 860; Tallmadge* v. *East River Bank* (*1862*), *26 N. Y. 105.*

In this case (heard as on demurrer) the imposition of the restriction on the sale of the corner lots by the general plan, in connection with the map, and the special representations at the time of the sale must be taken as admitted. But, as it sufficiently appears by the bill, that these restrictions on the adjoining lots now solely owned by the defendant, were not imposed by a conveyance or instrument in which her husband joined and which was acknowledged by the wife as a deed, the question is whether the wife's contracts, representations or acts of other kinds imposing such restrictions are not within the exception of the fourteenth section.

In my judgment, they are not, for the reason that this provision of the fourteenth section was, I think, one which related only to the character of conveyances and instruments which were intended to be the means employed for conveying or encumbering the legal or equitable title of a married woman in the lands, and to prescribe the formalities for such conveyance or instrument if made. It was not intended, in my judgment, to restrict the power of the wife, under the fifth section, to enter into such obligations and contracts, express or implied, as would be enforced by a court of equity, independent of their being created by a conveyance or other instrument. Had the defendant, as a *feme sole,* imposed the plan and entered into the restrictions alleged in the bill, there would be no question of the right of a court of equity to enforce the restrictions by injunction, independent of any conveyance or other instrument creating them, and, in my judgment, the construction of the two sections together as applied to the facts in the present case, is that the wife's contracts or obligations which relate to lands which she owns or in which she has an interest are enforceable in equity to the same extent as if she were a *feme sole,* with the qualification that if, as against a *feme sole,* the creation or enforcement of such contracts requires a conveyance or other instrument, then

in the case of a married woman this conveyance or instrument must be executed with her husband as heretofore, otherwise it cannot be created or enforced. But where a *feme sole,* in equity, without a conveyance or other instrument, would be required by injunction to specifically perform a contract, and this performance does not require the execution of a conveyance or other instrument, then a married woman in similar circumstances may be required to perform the contract. This construction prevents any decree for specific performance of a contract for conveyances of land by a married woman in which the husband did not join, as was held by Vice-Chancellor Stevens in *Corby* v. *Drew (1897), 55 N. J. Eq. 387; 391,* but does not prevent the enforcement by this court by injunction of restrictions as to her lands under a building plan, made by her as a married woman which would have been binding on her as a *feme sole,* and which may be enforced without requiring any conveyance or other instrument.

The motion to strike out must be denied, and the bill should be answered.