THE GOODYEAR HEIGHTS REALTY CO. *v.* FURRY ET AL.

(Decided December 2, 1929.)

*Messrs. Benner, Harter & Watters,* for plaintiff.
*Mr. O. H. Corvington,* for defendants.

PARDEE, J.   This case is here upon appeal, and has been submitted upon the evidence offered in the trial court, as shown by a typewritten report of the same

and some additional evidence introduced in this court.

The plaintiff company is a subsidiary of the Goodyear Tire & Rubber Company, and, as shown by the evidence, has laid out, subdivided, and developed large tracts of land in Akron in close proximity to the local plants of said company for the purpose of sale to its employees for residential purposes.

One of such developments is the First Addition to Goodyear Heights allotment, with its streets, avenues, and walks, and approximately 1,500 lots, as shown by the plat filed in 1917 in the recorder's office of Summit county, of which approximately 1,050 have been sold, one of which, to wit, lot 1231, was sold by said company to Andrew W. Wilt on December 21, 1925, and by him sold to the defendants, Irwin W. Furry et al., on February 3, 1928. Said lot is on the corner of the Brooklands and Tonawanda avenue, and is irregular in shape.

After the purchase of said lot by defendants, they erected upon the south end thereof a dwelling house, which complied as to position, design, materials, cost, location, etc., with the requirements of the restrictions contained upon said original plat, and in the deed which was used by said company when it conveyed said lot to Wilt, which deed contained the same restrictions as the others given by said company when it conveyed other lots in said addition to the purchasers thereof; and it is conceded by the defendants that all of said restrictions were part of a common scheme imposed for the benefit of said allotment, and that they apply with equal force and vigor to all of the lots in said allotment, including the one purchased by them.

After the defendants built said house, they sold the same by a conveyance which included only a part of said original lot, and they have started, and expect, unless restrained from so doing, to complete and sell, another residence on the part of said lot so retained by them, which part contains approximately 5,245 square feet of land.

The restrictions imposed, and, which the plaintiff claims are being violated by the defendants by the construction of said second house, are the following, to wit:

"1. The property shall be used for private residence purposes only * * *.

"2. No residence shall be built on any lot or lots costing less than the minimum amount herein specified * * *.

"3. No building shall be erected on any lot with its main front wall nearer the street than is shown by the following schedule * * *.

"4(a). No porch or other minor part of any house shall project more than eight feet nearer the street than the building line, nor shall any house be erected on any of said lots with the main side wall nearer than six feet from the side line of such lot or lots.

"(b) In the event that the contour of the land is such that the building cannot be located as specified in paragraph 4(a), the location is to be according to the ruling of the Architectural Committee of the Goodyear Heights Realty Company.

"5. A double house may be constructed on any lot; provided, however, that the building is of such design that the outside appearance is that of a single house * * *.

"7. The barn or garage, if any, shall be built of

the same material as the house to which it belongs, and shall be placed on the rear of the lot, and in no case nearer to the front thereof than the rear line of said house.''

Plaintiff claims that the foregoing restrictions, taken together, show that only one residence may be built upon said lot. Plaintiff also claims that defendants' lot was sold from a recorded plat, in accordance with a general plan or scheme, with an implied condition against subdivision, and it is claimed by it and admitted by defendants that never before has a lot in said allotment been subdivided, nor more than one house built on any lot.

The defendants deny that the restrictions prevent the erection of more than one residence upon said lot, if it can be done without violating the other restrictions as to set back lines, etc., which other restrictions they say will be observed by them, and they deny that there are any covenants, express or otherwise, against their subdividing said lot.

They also allege that the plaintiff is estopped from claiming the benefit of the restrictions, if they should be found as it claims them to be, by the acts and conduct of its agents at the time the original house was planned, located, and built by the defendants.

It is quite apparent that this allotment was designed for private residence purposes only, and that only a few of its especially designated lots could be used for other purposes, and defendants' lot is not one of those. Having this purpose in mind, the allotter used apt words to express that intention when the following language was used in said deed: ''Private residence purposes only.'' He did not say ''only one private residence'' or ''not more than one

private residence" might be erected upon one of said lots, but that said lots might be used for "private residence purposes only." This intention is as fully carried out when more than one private residence is built as when one only is built, so long as they are used for the purposes permitted by said restrictions. From the language used, it cannot be determined how many residences may be built, as the number is not mentioned, and it may just as reasonably be said that the allotter had in mind two or more as well as one only, so long as the other restrictions were not violated.

The other parts of the common restrictions hereinbefore quoted do not help in any way in arriving at a proper decision, as the words designating the purposes for which the lots may be used are plain and unambiguous, and admit of but one conclusion, and that is that the words, "private residence purposes only," do not either expressly or impliedly have any reference to the number, but only to the kind, of buildings to be erected upon the lots in said allotment, and the purpose for which they are to be used.

The primary restriction, as set out under No. 1, hereinbefore quoted, describes the purpose for which the lots may be used; and, keeping that purpose in mind, the allotter stated that the building commonly known as a residence erected upon any one of said lots should cost not less than a minimum amount, in accordance with the schedule set forth in said deeds, depending upon its particular location upon certain streets in said allotment.

The allotter further stated, in paragraph 4(b), *supra*, of said restrictions, that in particular cases,

where the contour of the land is such that the building (house) cannot be built in accordance with the general scheme as to the front and side lines, as specified in 4(a), *supra,* of said restrictions, the "house" is to be located in accordance with the ruling of certain agents of said plaintiff; but the use of the article "the" in paragraph 4(b), *supra,* before the word "building" (house) is not a limitation upon the number of houses to be erected, as it refers immediately to the preceding paragraph, which says "any" house, which in common speech, and as commonly used and understood, may mean one or one out of a number.

Therefore, taking these two paragraphs together, in connection with the primary purpose announced by said allotter, they do not limit in any way the number of houses that may be built upon any one of said lots.

The restriction contained in the deed as to a double house does not add to or take from the primary purpose the allotter had in mind, as a double house, so long as it is used for private residence purposes only, would, of course, comply with the terms of the restrictions.

"A clause in a conveyance restricting the use of the property conveyed 'for residence purposes only' does not prohibit the erection of a double or two-family house on the premises." *Hunt* v. *Held,* 90 Ohio St., 280, 107 N. E., 765, L. R. A., 1915B, 543, Ann. Cas., 1916C, 1051.

So, the granting of this permission in the deeds is, under said decision, superfluous—its only effective part being the clause which says that, if a double

house is erected, it shall have the outward appearance of a single house.

The lot in question, being a corner one, may have a garage as a part of the house, as corner lots are especially excepted from the foregoing restrictions contained in the deed by the restriction placed upon the plat, to wit: "No barn, garage, or other separate outbuilding permitted on corner lots. Garage may be built as part of residence." So paragraph 7 of said restrictions, as hereinbefore quoted, is modified by the restriction contained upon the plat, and no barn, garage, or other separate outbuilding may be erected upon said lot, and, if the owners thereof desire a garage, it must be built as a part of a residence building erected upon said lot.

So the other restrictions hereinbefore quoted are not in conflict, but are in entire harmony with this conclusion. If the plaintiff had intended to restrict the use of said property, as now claimed by it, it could easily have used language that would have expressed such purpose. It is not our province to read it into the contract.

We believe there is no doubt that we have reached the proper conclusion as to the meaning of said restrictions, but, if there were any doubt in our minds in relation thereto, we would have to resolve that doubt in favor of the free use of said property, and against the restrictions, as that is the universal rule as announced by the courts of this country; it being recognized in this state in the following cases, to wit:

"Where the right to enforce a restriction contained in the conveyance as to the use of the property conveyed is doubtful, all doubt should be re-

solved in favor of the free use thereof for lawful purposes by the owner of the fee.'' *Hunt* v. *Held,* 90 Ohio St., 280, 107 N. E., 765, L. R. A., 1915B, 543, Ann. Cas., 1916C, 1051.

And if the words used in said restrictions were capable of more than one construction, the same conclusion would have to be reached.

''Where the words of a restriction contained in a deed of conveyance are equally capable of two or more different constructions, that construction will be adopted which least restricts the free use of the land.'' *Frederick* v. *Hay,* 104 Ohio St., 292, 135 N. E., 535.

The next question presented is, Do the deeds delivered by said company, under the facts of this case, prevent a purchaser of one of said lots from subdividing it and selling the parts thereof?

This question is not presented at the instance of a grantee against an allotter, and does not involve the claim of a grantee of an implied covenant growing out of the establishment of streets, parks, or other public places, as shown by a plat at the time of the sale by a grantor of lots to others in reliance upon such plat, but involves the claim that an allotter may prevent a purchaser from subdividing a lot by an implied covenant arising from the fact that the lot was sold by reference to its number upon a recorded plat, to which plat reference is made in the deed of conveyance. The plat as filed and recorded shows the numbers of the various lots and gives their different sizes, with their different angles, etc., and shows that they face certain streets and avenues.

The rule hereinbefore stated, that restrictions im-

posed as to the use of lots are to be strictly construed, and that, in case of doubt as to their meaning, the doubt shall be resolved in favor of the free use of said property, *Hunt* v. *Held, supra,* applies with equal vigor in cases where restrictions are attempted to be imposed upon the right of an owner to subdivide lots in an allotment.

There are no express words in the deed or upon the plat which prevent the subdivision from being made by said purchasers, and there is no claim made, and no evidence offered, that any representations were ever made by any one on behalf of said company, or agreed to by any purchaser, to the effect that it was part of the common plan and scheme that the lots sold to the purchasers should not be subdivided and resold by them, that the lots still owned and unsold by the company should not be subdivided and sold, or that defendants or their predecessor in title ever agreed not to subdivide said lot. The sole reliance of the plaintiff is upon the so-called implied covenant not to do so, which it alleges grows out of the plan and scheme as shown by the recitations in the common deeds; the division of the land into lots, as shown on the plat, to which reference is made in the deed; and the fact that no one ever subdivided one of said lots before.

It would have been very easy indeed, if the allotter had intended it to be so, to have had a common plan in relation thereto, and to have prohibited, by express contract, the purchasers of its lots from subdividing the lots so purchased by them.

The plaintiff, by the recitations upon the plat and in its deeds, with great particularity stated its restrictions as to the use to which said property could

be put, established setback lines, made provisions as to the costs of the residences to be built, etc., and yet failed to specify that only one residence should be built upon each of said lots, or that the lots should not be subdivided. How simple it would have been to have added these two restrictions to the common plan, so carefully evolved and stated! And the fact that it was not done, when considered with the many restrictions that were imposed, leads us to one and only one conclusion, and that is that it was not intended to be done.

The deeds, with their restrictions, executed and delivered by the plaintiff and accepted by its grantees, made valid and binding contracts between the parties, and now the plaintiff desires us to make a new contract for it and the defendants and include therein new and other restrictions and limitations which were not in the minds of the parties, and to substitute our contract for the old one made by them. If we should do this, we would be violating one of the fundamental rules of law—that the parties, when competent, shall make their own contract.

From our investigation of the authorities, we find many instances of implied covenants which have been enforced against an allotter by a purchaser of lots who purchased in reliance upon a plat in existence at the time; but most of these cases relate to streets or other public places as shown upon the plat at the time of purchase, and which the allotter subsequently attempted to change, to the injury of such lot owner, who purchased in reliance upon the implied representation that such streets or other public places would not be changed. We found one or two other cases which did not involve streets or

other public places, in which the purchaser of a lot, in reliance upon the plat, in connection with other circumstances, was enabled to establish a covenant which prevented a change of plat to his injury; and we found other cases in which a purchaser of lots attempted to prevent an allotter from subdividing or selling lots of smaller size than that shown upon a plat made by him; but in all of such latter cases the courts uniformly held that, in the absence of a contract, the owner had a right so to do, two of the recent cases being the following:

"An injunction will not be granted restraining an owner of land from subdividing or selling lots of smaller dimensions than those indicated on a plan made by him, in the absence of an express agreement or covenant that the land embraced in the map shall not be sold in lots smaller in area than those thereon, and no such covenant is implied from the mere making of the map and sale of lots with reference thereto." *Stoever* v. *Gowen,* 280 Pa., 424, 124 Atl., 684.

"In the absence of a general plan restricting the lots in a subdivision to a certain size, equity will not impress the restriction on all of the lots therein.

"That a lot is sold according to a blueprint of a proposed plat does not imply a covenant that the size of the remaining lots shall not be changed." *Utujian* v. *Boldt,* 242 Mich., 331, 218 N. W., 692.

We have diligently searched the books, and we have been unable to find any case in which the allotter attempted to impose, by implication, a restriction such as this upon a lot after it had been sold, and it is only fair to say that none has been cited to us.

From time immemorial land has been bought and

sold without restrictions or limitations upon the right to divide and subdivide it as the owner sees fit, and in a way most advantageous to himself. In early times it was sold by metes and bounds, and this is one of the ways now in general use, especially in rural communities. In municipalities and territory contiguous thereto, it is the general practice to subdivide the land into lots or plots of ground of varying sizes, to describe them accurately, and to give each one a consecutive number—the size, location, and number of each lot being set forth with particularity upon a manuscript or plat, which is generally filed and recorded in a public office in accordance with local law. And it is common knowledge that this is all done, not to establish a general plan or scheme for the allotment of which the several lots are a part, which is binding upon the allotter and his grantees, so that the size of the lots so laid out may not be subsequently changed if the owners desire to do so, but solely for the convenience of the owners in conveying the lots when sold. We all know from our experiences and observation that lots bought by reference to their numbers upon plats have been subdivided without let or hindrance, and that no one ever questioned the right of the owners to do so until it was suggested in this case.

If an allotter, in the absence of an express restriction not to do so, cannot be restrained from subdividing the remaining lots owned by him after he has sold lots in the allotment, how can it be claimed that a purchaser, who is one step removed from the allotter, may not subdivide lots purchased by him?

The defendants bought their lot as shown upon the recorded plat, and there is nothing upon said plat which informs a purchaser of a lot in said allotment that he will not be permitted to subdivide it and sell the parts if he so desires; and there is nothing in their deed which says that the lots were laid off in accordance with a general plan or scheme which requires the lots to be kept the same size as when bought, so there can be no implied covenant arising from the fact that the lot is sold by its number upon a plat and the deed conveying the same refers to it as such; and the facts that there was a common plan as to the improvements which were to be made upon the lots, and that no one ever attempted to divide a lot before, do not add force to the claimed limitation upon the right to subdivide said lot.

We are therefore unanimously of the opinion that the defendants do have a right to erect said house, as planned, upon said lot, as divided by them.

But, if the claims of the plaintiff could be sustained, we are unanimously of the opinion that it would be estopped from asserting said claims in a court of equity by the acts and conduct of its authorized agents at the time the defendants submitted the plans of their original house to them for their approval, and by the acts and conduct of said agents at the time said house was located on the south side of said lot, all as fully shown by the evidence; and it would serve no useful purpose to set forth and analyze the evidence, as it is fully known to the attorneys.

For the reasons stated, the prayer of the petition

445

is denied, and the case dismissed at plaintiff's costs.

*Petition dismissed.*

FUNK, P. J., and WASHBURN, J., concur.