## CLYDE V. MATTHEWS *v.* KERNEWOOD, INCORPORATED.

[No. 80, October Term, 1944.]

*Decided January 11, 1945.*

The cause was argued before MARBURY, C. J., DELA-PLAINE, COLLINS, GRASON, and MELVIN, JJ.

*R. E. Lee Marshall* and *Richard W. Case,* with whom were *Marshall, Carey & Doub* on the brief, for the appellants.

*William L. Rawls* and *G. Van Velsor Wolf,* with whom were *Marbury, Gosnell & Williams* on the brief, for the appellee

COLLINS, J., delivered the opinion of the Court.

This is an appeal from the Circuit Court of Baltimore City in dismissing a bill of complaint asking for an in-

junction to prohibit the resubdivision of the residential subdivision known as Kernewood.

On July 19, 1926, John W. Garrett and wife, who were the owners of a large and beautiful estate known as "Evergreen" in the northwestern section of Baltimore City, conveyed thirty-five acres more or less of that property, which was to be divided into large lots, to a corporation known as Kernewood, Inc., John W. Garrett being one of the directors. The purpose of the corporation was the purchasing, owning, mortgaging, selling, transferring, investing, and dealing in real property and the improving, managing, and operating of real property. The original plan no doubt was that this was to be a subdivision of unusually large lots.

On March 24, 1927, Kernewood, hereinafter known as the defendant corporation, appellee, conveyed to Miles White, Jr., and Virginia P. B. White, his wife, part of said tract known as Lot No. 1. This deed recited in effect that the defendant corporation was the owner of a tract of land in Baltimore City which it had caused to be platted into lots or parcels and through which streets and avenues had been divided, which plat was attached to the deed, made a part thereof, and filed with the deed among the land records of Baltimore City; that the defendant corporation intended to develop and improve said tracts of land and offer lots for sale subjecting all of the tract and lots to certain covenants, agreements, easements, restrictions, conditions, and charges as thereinafter set out; that the parties of the second part were desirous of purchasing one of said lots as shown on said plat and of making the covenants, agreements, easements, restrictions, conditions, and charges thereinafter set out binding upon the lot so purchased as upon all the remaining land in said tract as shown upon the plat.

The restrictions thereinafter recited in this deed were divided into ten sections. Section I provided in effect that no business institution, school, apartment house or institution of like character could be erected on said property. Section II provided that "no building of any kind

whatsoever except private dwelling houses, each dwelling designed for occupancy by a single family, shall be erected or maintained on any of the lots or subdivisions shown and indicated on the plat above referred to and no more than one such dwelling shall be erected on any one lot or subdivision shown on said plat save only in the case of Lot No. 1 which may at the option of the owner thereof be subdivided into not more than two lots neither of which shall contain less than fifty thousand square feet in area * * *." This section further limited the erection of dwelling houses to a cost of not less than $20,000 based upon then present building costs on some lots, $12,000 cost on some lots and $15,000 cost on other lots. There were other restrictions in this section affecting porches, garages, and the construction of the house. Section III restricted the building of fence walls and other structures to approval of the plans by the defendant corporation. Section IV related to distance of dwellings from street or road. On account of the importance of Section V, it is necessary that we quote this in full: "The Company hereby expressly reserves the right in its absolute discretion at any time to annul, waive, change, or modify any of the restrictions, conditions, covenants, agreements, or provisions as hereinbefore set out in Sections II and III and IV hereof as to any part of said tract then owned by the Company and with the consent of the then owner as to any other land included in said tract." For this case it is not necessary that we recite the provisions of Sections VI, VII, VIII, and IX. Section X provided that the restrictions should be in perpetuity except as provided in Section V and with other limitations thereon.

The plat filed showed a subdivision of thirty-five acres into thirty-four lots. Between the years of 1927 and 1929 about one-half the lots were sold, and one lot was sold in 1944 to Mr. William F. Schmick at a reduced price, leaving fourteen lots to be disposed of. Before his death in June, 1942, Mr. John W. Garrett personally paid, after 1929, taxes in the amount of $11,700 on the

unsold lots, and since his death, the trustee has paid $3,599.72 in taxes on the unsold lots out of the sale of the lot to Mr. William F. Schmick aforesaid.

By his will Mr. Garrett bequeathed his stock in defendant corporation, consisting of 2250 shares of a total of 2500 shares issued, in trust to the Safe Deposit & Trust Company. Johns Hopkins University is to be the eventual recipient.

The trustee, being unable to dispose of the remainder of the property, consulted the owners of the lots in the development, which resulted in the sale of the one lot in 1944 at a reduced price to Mr. Schmick, one of the then owners. Being unable to make any further sales, the trustee then consulted various real estate brokers and the Roland Park Company and was advised to resubdivide these fourteen unimproved lots into thirty-four lots and modify the restrictions as to the cost of dwellings to be erected thereon. As a result of this advice, the trustee had a new plat prepared, making the unsold property into thirty-four lots and modifying the restrictions as to costs of residences by providing for architectural approval before any house was built.

As a result of this action on the part of the trustee, the appellant, Clyde V. Matthews, together with seven owners of lots in the development of Kernewood, filed a bill of complaint in the Circuit Court for Baltimore City reciting in effect that they were the owners of lots aforesaid, the incorporation of the defendant, the execution of the deed by John W. Garrett aforesaid to the defendant, the execution by the defendant corporation of the aforesaid deed to the Whites. They further alleged by paragraph eight of the bill of complaint that Section II stipulated that not more than one dwelling may be built on any lot shown on the plat filed with the White deed; further that the purpose of this restriction was the adoption of a general plan for the subdivision, an integral part of which was that private dwellings would be spaced at distances greater than that found in ordinary suburban subdivisions. In this paragraph it is further

stated that the adoption of the original plan enhanced the value of all lots in the subdivision and that the complainants purchased their lots in reliance on this general plan. In paragraph nine of the bill of complaint they allege how the defendant proposed to subdivide the remaining property. Paragraph ten of the bill of complaint alleges that by Section II of the restrictive covenants the cost of the dwellings was limited to certain amounts, and by the proposed plan the defendant intends to sell lots which would not be subject to this price restriction. They further alleged in paragraph eleven that Section V of the restrictive covenants could not possibly be exercised in such a way as to destroy or impair the general plan of the subdivision and would not be a reasonable or proper or legal exercise of the power reserved in Section V. By paragraph twelve of the bill of complaint they charge that the direct violation of the restrictive covenants defined in paragraphs eight and ten of the bill of complaint would destroy or impair the general plan of said subdivision, namely, the spacing of houses of certain character and cost at distances greater than that found in the ordinary suburban subdivision; that the proposed resubdivision would destroy or impair the value of all the lots in said subdivision, the general plan having been relied on by the complainants as particularly described in paragraph eight of the bill of complaint and further, the value of the property owned by the complainants would be greatly depreciated if the new plan were put into effect. They asked the Court to restrain and enjoin the defendant from putting into effect the new plan and that the defendant be restrained and enjoined from resubdividing the subdivision known as Kernewood, and for other and further relief.

After answer filed and hearing before the Chancellor, the bill of complaint by decree was dismissed, and the appellant, Clyde V. Matthews, one of the complainants, appeals from that decree to this Court.

It is contended by the appellant that the restriction against any redivision is not found in Sections II, III,

and IV of the appellee's deed, but is expressed as an appurtenance to the premises granted and conveyed by the deed and that this restriction is therefore not subject to the reserved power of revocation contained in Section V of the deed which is expressly limited to restrictions set out in Sections II, III, and IV. It is strenuously argued that the recording of the map in itself constitutes a restriction on the size of the lots independent of the specific restrictions contained in the deed. It is difficult to see how any restrictions in the plat could be considered separate from those contained in the deed as the plat is specifically referred to in the deed and there are no specific restrictions written on the plat. The appellant relies strongly on New Jersey cases to sustain this contention, namely, *Sennig v. Ocean City Ass'n,* 1886, 41 N. J. Eq. 606, 7 A. 491; *Bridgewater v. Ocean City R. Co.,* 1901, 62 N. J. Eq. 276, 49 A. 801. These were cases in which the deeds contained no general restrictions and where a plat had been filed laying out certain lots, and the deeds referred to the plat. On the plat parts of the property were shown as reserved for camp grounds or parks. When an effort was made to sell these lots for other purposes, the Court held that the plat implied a covenant that the lots in question would be used for that purpose alone and restricted the sale for other purposes. These cases were followed by the later case in New Jersey of *Schickhaus v. Sanford,* 1914, 83 N. J. Eq. 454, 91 A. 878, where there was a plan for lots filed, but the restrictions in the deed applied only to the character and use of buildings to be erected on the lot. There was no expressed covenant in the deed in relation to the adjoining lots. The Court held in that case that the method of sale of lots as to location and size could not be changed as there was an implied restriction under the general plan laid out in the plat. These cases, however, are of little help here as there were no broad general restrictions in the deeds as in the case at bar.

The weight of authority seems to sustain the contention of the appellee that there is no implied restriction

by the mere filing of the plat, no restrictions being set
out on the plat. It was held in the New Jersey case of
*Herold v. Columbia Inv. & Real Estate Co.,* 72 N. J. Eq.
857, 67 A. 607, that the mere filing of a plat in the ab-
sence of showing a neighborhood scheme calling for the
erection of but one building on a single lot did not imply
a covenant restricting the subdividing of the lots into
smaller parcels. In the case of *Goodyear Heights Realty
Co. v. Furry,* 33 Ohio App. 432, 170 N. E. 23, there was
a set of full restrictions in the deed limiting the uses of
the whole tract and forming a common scheme binding on
all the lots. There was no restriction in the deed, how-
ever, that only one residence should be built upon each
of said lots or that the lots should not be subdivided.
The Court held in that case that a plat which set out
with great particularity the lots did not imply a restric-
tion against subdivision. That case is very similar to
the one now before this Court with the exception that
there is a specific restriction here that only one residence
should be built upon a single lot. In the Pennsylvania
case of *Stoever v. Gowen,* 280 Pa. 424, 124 A. 684, in
some of the deeds for part of a tract, reference is made
to a certain survey, but there was no reference in any
of the deeds to a plan. The Court held that the owner
would not be restrained from subdividing the lots into
smaller dimensions in the absence of an expressed agree-
ment that the land embraced in the map should not be
sold in lots smaller in area than those shown thereon.
In the case of *Hickson v. Noroton Manor,* 118 Conn. 180,
171 A. 31, property was conveyed in a deed as a portion
of a specific lot on a map of property with a covenant
of warranty that the same was free from all encum-
brances except certain conditions and restrictions men-
tioned in the deed. The complainant claimed certain
other restrictions by reason of a plat or map filed. The
Court held that there were no implied restrictions as to
the size or shape of the lots upon the mere making and
recording of the plat; that the existence of expressed
restrictions in the deed indicated that those restrictions

and no others were the restrictions contemplated, and further that the existence of uniform restrictions in the deed is evidence of the adoption of a general plan upon all of the lots upon the map, and the restrictions thus imposed are the expressed restrictions contained in the deed. Implied restrictions have never been favored by this Court. It was said in the case of *Baltimore Butchers Abattoir & Live Stock Co. v. Union Rendering Co.*, 179 Md. 117, at page 123, 17 A. 2d 130, at page 133: "It is also a fundamental rule that, since restrictions are in derogation of conveyances and repugnant to trade and commerce, restrictive covenants are not favored by the courts, but should be strictly construed against the parties seeking to enforce them. A restrictive covenant should not be extended by implication beyond its original intent to include anything not clearly expressed in the conveyance, and if there is ambiguity in its meaning, any doubt should be resolved in favor of the unrestricted use of the property, if it reasonably can be done. The burden rests upon the party relying on a restrictive covenant to bring himself within its terms."

The allegations in the bill of complaint filed by the appellant in this case are a complete answer to appellant's contention that the restriction against resubdivision is not contained in Section II of the deed and therefore not subject to be annulled by Section V. In paragraph seven of the bill of complaint aforesaid, it is alleged therein that each lot in the Kernewood subdivision was subject to the ten sections set out in the White deed. In paragraph eight of the bill of complaint filed by the appellant, it is stated that "by Section II of the restrictive covenants aforesaid, it was expressly stipulated that not more than one dwelling may be built on any one lot or subdivision shown on the plat which was filed with the deed from Kernewood, Incorporated, to Miles White, Jr., and Virginia P. B. White, a photostat of said plat being filed herein as Plaintiffs' 'Exhibit C.' The purpose of this restriction was the adoption of a general plan for the subdivision known as Kernewood an integral part of

which being that private dwellings would be spaced at distances greater than that found in ordinary suburban subdivisions." In paragraph ten of the bill appellant states the restriction as to the cost of building and by paragraph twelve he states the proposed resubdivision is a direct violation of the restrictive covenants, more particularly defined in paragraphs eight and ten of the bill of complaint. The restriction defined in paragraphs eight and ten is Section II. Therefore by his own allegations in his bill of complaint, he claims the resubdivision is a violation of Section II of the deed and therefore as the bill of complaint was not amended, he cannot now contend in the same case that it is not a violation of that section. Other strong evidence that Section II was contemplated as a restriction against further subdivision is that Section II specifically grants in words the right to the Whites to subdivide lot No. 1 into not more than two lots. We must therefore conclude that the restriction against resubdivision is contained in Section II of the restrictions which is subject to Section V.

Appellant admits that there is in the deed by Section II a restriction on the building cost, but that appellee has no authority under its reserved power contained in Section V to alter or change this restriction.

Section V of the restrictions gives the right to the company in its absolute discretion at any time to annul any of the restrictions, covenants, or agreements set forth in Sections II, III, and IV. The word "annul" is hardly one requiring judicial interpretation. "It is not a technical word and there is nothing which prevents the idea from being expressed in equivalent words; *Woodson v. Skinner*, 22 Mo. 24." *Black's Law Dictionary*, Third Edition. It is clearly understood to mean "revoke" or "abolish." This word was placed in the restrictions not idly or uselessly and is a part of a voluntary agreement. It is stated in *Berry's Digest of the Law of Restrictions on the Use of Real Property* at pages 47 and 48 in reference to the case of *Whitehouse v. Hugh,* 1906, 2 Ch. 283: "If the owner of a tract of land, which he has

subdivided and placed on the market for sale in parcels under a general plan, reserves the right in such plan and in all the deeds of conveyance to alter the plan and restrictions imposed on the parcels, he has, of course, a right to do so, in accordance with such provision." The parties who purchased the lots entered into a contract and the rights of the parties must be determined by the agreement which they voluntarily made. Courts cannot relieve them of the consequences of a bad bargain by making a different contract for them. *Cowan, Inc., v. Meyer,* 125 Md. 450. 466, 94 A. 18; *Christhilf v. Baltimore,* 152 Md. 204, 209, 136 A. 527. One who conveys a part of a tract of land by deed containing restrictive covenants may reserve to himself the power to modify or omit these restrictions altogether as was done in the case at bar. *Bright v. Forest Hill Park Development Company.* 133 N. J. Eq. 170, 31 A. 2d 190, 194. In that case the Court said as to the reservation by the grantor to change the plan: "That right was the privilege of adapting each transaction to the conditions as they might obtain in the course of time, and while grantor still owned other land in the neighborhood." The language being without ambiguity in Section V, the Court must give effect to it, the parties having so agreed, although an apparent hardship to the present owners may thereby occur. *New England Mutual Life Insurance Co. v. Hurst,* 174 Md. 596, 603, 199 A. 822. Even if language used to express a restrictive covenant involves a doubt as to construction, the rule is that such covenants are to be construed strictly against those seeking to enforce them and all doubts must be resolved in favor of the natural and free use of the property. *Bartell v. Senger,* 160 Md. 685, 693, 155 A. 174; *Hemmel v. Hendler,* 161 Md. 181, 187, 155 A. 316; *Ferguson v. Beth-Mary Steel Corp.,* 166 Md. 666, 672, 172 A. 238; *McKenrick v. Savings Bank,* 174 Md. 118, 128, 197 A. 580; *Yorkway Apts. v. Dundalk Co.,* 180 Md. 647, 650, 26 A. 2d 398; *Gulf Oil Corp. v. Levy,* 181 Md. 488, 30 A. 2d. 740. Enduring restrictions in the use and enjoyment of property is not favored by the law and a strict construc-

tion is used and all doubt resolved in favor of the free and full enjoyment of the land. *Levy v. Dundalk Co.,* 177 Md. 636, 648, 11 A. 2d 476. The fact that permission was given by the corporation by deed in 1929, and by declaration executed by Mr. John W. Garrett in 1937, as president of defendant corporation, to one David Glass to subdivide other lots into much smaller subdivisions, is evidence that the corporation deemed it had the right to so authorize a further resubdivision under Section V and the permission to Glass so states.

In the case before us some expert witnesses testify that such a resubdivision would change the character of the neighborhood while others say that none of the lots in the new resubdivision are smaller than those in the adjoining development of Guilford. Mr. Henry V. Hubbard, the expert with the original developers of the property, testified that the resubdivision would make another kind of plan but that he could not say that it was a better plan or a worse plan. It is evident that the original plan was a subdivision of large lots with expensive houses and that the present change in the plan of lots permits less expensive properties. There is evidence offered which is certainly credible that at this time it is difficult to sell large lots which call for the construction of large and expensive houses based on 1927 costs. Such property is not in demand on account of the servant problem and high taxes. It is also forcibly argued that unless such a resubdivision is made, the property may grow up in grass and weeds and may eventually be sold for taxes, which would certainly be more detrimental to the complainant than the plan now proposed.

The restrictions against resubdivision of the lots and cost of building being included in Section II of the restrictions in the deed, and these being subject to annulment, change or modification by Section V, and there being no implied restrictions from the filing of the plat, we conclude that the Chancellor was correct in dismissing the bill of complaint.

*Decree affirmed, with costs.*