COWHERD DEVELOPMENT COMPANY, a Corporation, ET AL., Appellants, v. LUCIAN W. LITTICK ET AL., Respondents, No. 42059—238 S. W. (2d) 346.

Division Two, March 12, 1951.

Motion for Rehearing or to Transfer to Banc Overruled, April 9, 1951.

1002

*John C. Meredith, Meredith & Harwood, George T. Aughinbaugh, Moore & Aughinbaugh, Alvin C. Trippe, Hale Houts* and *Hogsett, Trippe, Depping, Houts & James* for appellants.

*George K. Brasher* and *Guy M. Boyer* for respondents.

[347] WESTHUES, C.—This is an action brought under the Declaratory Judgment Act, Chapter 527, R. S. Mo. 1949. The question presented is whether restrictions in Hinkle Place, Kansas City, Missouri, were extended for a period of 25 years from September 1, 1946,

as to all of the lots or whether such restrictions were extended only as to part of the lots in Hinkle Place. The trial court decreed that the restrictions had been extended as to all of the lots. Plaintiffs who by their suit sought to have certain lots exempted have appealed.

Hinkle Place was platted as an addition in Kansas City, Missouri, effective September 1, 1921. The restrictions imposed were to continue for 25 years. The addition is bounded on the north by 62nd Street, on the south by 63rd Street, on the east by Oak Street, and on the west by Main Street. Morningside Drive is a street running north and south through the center of the addition. The plot to the east is divided by McGee Street running north and south. The plot to the west of Morningside Drive is divided by 62nd Street Terrace which runs east and west. The lots are numbered from 1 to 72 inclusive. The addition was restricted to one-family dwellings and certain other restrictions that are usual in such cases. [348] The property owners in the addition have been vigilant in guarding the restrictions. See Hall v. Koehler, 347 Mo. 658, 148 S. W. (2d) 489. The plat filed for record contained the following clause authorizing an extension of the restrictions for a period of 25 years:

"Said period of 25 years during which the aforesaid restrictions shall be enforced may be extended as to any or all of said restrictions for additional periods not exceeding 25 years each, by owners of the majority of the front feet of said Addition prior to the expiration of the first 25 years, or any subsequent period, executing and acknowledging an agreement or agreements in writing, extending the time as to said covenants and restrictions and filing the same of record in the office of the Recorder of Deeds of Jackson County, Missouri, at Kansas City."

On May 6, 1940, there was filed for record an extension agreement signed by the owners of property in the addition representing a majority of the front feet in the addition. Anything over 2153.075 feet constituted a majority. The agreement contained the following:

"Now, Therefore, The undersigned owners of the certain lots and tracts in said addition set opposite their respective names, agree that all the restrictions, covenants and reservations expressed on the face of the plat of Hinkle Place, shall be extended for a period of twenty-five (25) years from September 1st, 1946, as to all the lots in said Hinkle Place; except the South 40 feet of Lot 8, Lots 9 to 12, inclusive, Lots 27 and 28 and Lots 41 to 50, inclusive, which excepted lots are not included in this extension agreement."

On July 20, 1940, an extension agreement was recorded containing the following:

"* * * that each and every one of said restrictions set forth on the recorded plat of said Hinkle Place shall be and is hereby extended for a period of 25 years from the 1st day of

September, 1946, said 1st day of September, 1946, being the date
of the expiration of the first and original restriction.''

This agreement was likewise signed by property owners of the addition
owning a majority of the front feet in Hinkle Place.

Then on August 27, 1946, there was filed for record an extension
agreement similar to the first agreement filed on May 6, 1940. This
paper was signed by parties owning 808.22 front feet in Hinkle Place.
Property owners of 427.51 front feet signed both the second and third
agreements. If 427.51 front feet were taken from the total number of
front feet represented in the second agreement, it would leave that
agreement without signers representing a majority of front feet in
the addition.

Appellants in their brief say that the second agreement was made
ineffective and was cancelled by the third because this third agree-
ment was signed by the owners of 427.51 feet frontage who had
signed the second agreement. It is contended that when these parties
signed the third agreement they thereby withdrew their names from
the second, thus leaving the second without sufficient support.

The defendants say that the extension provision did not au-
thorize the owners of a majority of front feet in Hinkle Place to
exempt any one or more lots from the restrictions; that such majority
owners had the power to modify any or all of the restrictions but not
to exempt some lots and extend and enforce the restrictions as to
others. They say further that the first and third purported agree-
ments are, therefore, void. This calls for an interpretation of the
provision granting the power to extend the restrictions. Note how
the grant of power reads: ''Said period of 25 years during which the
aforesaid restrictions shall be enforced may be extended as to any or
all of said restrictions for additional periods not exceeding 25 years
each, * * *.'' Nothing was said about exempting one or more
lots from the restrictions, but the clause specifically limits authority
to modify the restrictions. Certainly no prospective purchaser of
a lot in Hinkle Place when reading the clause above-quoted would
understand that the owners of a majority of front feet in the sub-
division would have the power to release the lots adjoining his lot
from the restrictions and continue them as to others.

[349] In Hisey v. Eastminster Presbyterian Church, 130 Mo. App.
566, property owners brought suit to restrain the building of a
church. The defendants claimed that a clause in the grantors'
deed creating the restrictions which read, '' 'it being understood that
the covenants and restrictions referred to in this paragraph may be
varied by said party of the first part as occasion may require.' ''
justified the grantors in releasing one lot for the building of a church.
The Kansas City Court of Appeals held no such authority was re-
tained. The court held the language used might in certain cir-
cumstances authorize modification of restrictions but could not be

construed to authorize the grantors to annul the covenant. See also 26 C. J. S. 569, Sec. 170, and Strauss v. J. C. Nichols Land Co., 327 Mo. 205, 37 S. W. (2d) 505.

We hold that the extension clause in question did not authorize owners of a majority of front feet in the addition to extend the restrictions as to a part of the lots for 25 years and to release them as to others.

Appellants' principal point is that the extension agreement filed July 20, 1940, was rendered insufficient when the owners of lots having a frontage of 427.51 feet who had signed the agreement afterward signed the agreement of August 27, 1946. Appellants say that such signers thereby withdrew their names from the agreement of July 20, 1940. To this we cannot agree. Cases are cited such as City of Sedalia ex rel. Gilsonite Const. Co. v. Montgomery, 227 Mo. 1, 127 S. W. 50, where a remonstrance had been filed against a proposed street improvement. Later a number of the signers of the remonstrance withdrew their names by signing a paper expressly withdrawing their protest. In the present case none of the signers of the extension agreement withdrew therefrom. All they did was to sign another extension agreement which contained provisions not authorized by the empowering clause of the dedication of Hinkle Place. We hold that the purported extension agreements of May 6, 1940, and of August 27, 1946, were a nullity and, therefore, do not affect the extension agreement of July 20, 1940.

Appellants maintain that due to changed conditions which have taken place since the original restrictions were imposed, the restrictions should no longer be enforced. The evidence showed that a zoning ordinance permitted the erection of places of business on the north side of 63rd Street. It was also shown that 63rd Street is now a main trafficway. However, Hinkle Place at the time of trial had no place of business located therein. The restrictions had been strictly enforced.

The plaintiffs were owners of lots abutting on 63rd Street. They claimed that their property would be worth $100 more per front foot without restrictions. That would mean that the lots in Hinkle Place along 63rd Street would be worth about $70,000 more if the restrictions were removed. The evidence further showed that lots were bought and sold along 63rd Street after the zoning ordinance was passed and homes constructed thereon. Fletcher Cowherd, one of the plaintiffs and a promoter of Hinkle Place, was a witness for plaintiffs. He testified that when Hinkle Place was platted there were a number of business places in the neighborhood but that they had since increased in great numbers. He stated that the lots he owned along 63rd Street would have a sale value of $100 more per front foot if the restrictions were removed. However, he also testified that if

the restrictions were removed, the other property would be affected and be of less value. Note his evidence.

"Q. All right. Now, then, Mr. Cowherd, if you were permitted to construct business buildings or to use any of the lots facing on Sixty-third Street, or any of the lots abutting on Sixty-third Street, between Oak and Main Street what would be the result to the property immediately adjoining it to the north? Would it increase or decrease its value?

"A. Well, I should think it would affect the value of it.

"Q. Affect it how, up or down?

"A. Down.

"Q. It would go down very considerably?

"A. Well, it would be some, yes."

[350] One of the primary purposes of placing restrictions on subdivisions such as Hinkle Place in question here is to make the lots more salable for residential purposes. Such restrictions are supposed to be an assurance that the purchasers of lots may build homes thereon and be immune from the attacks of commercial expansion. In fact, the restrictions are imposed with the idea in mind that business is likely to encroach. The rule generally followed is well stated in 26 C. J. S. 575, 576, Sec. 171c: "Where a building restriction is designed to preserve property for residential purposes, its violation cannot be excused on the basis of a changed condition of the surroundings by reason of the fact that it is the opinion of the court that, in a comparatively short time, the premises will be worth more for business than for residential purposes; nor does the mere fact that lots, subject to building restrictions, have become more valuable for business than for residence purposes, as limited by the restrictions, of itself justify equity in annulling the restrictions." Rombauer v. Compton Heights Christian Church, 328 Mo. 1, 40 S. W. (2d) 545, l. c. 553 (10) (11); Benner v. Tacony Athletic Ass'n., 328 Pa. 577, 196 A. 390, l. c. 392 (4, 5); Booker v. Old Dominion Land Co., 188 Va. 143, 49 S. E. (2d) 314, l. c. 320 (7, 8). The restrictions in Hinkle Place have been preserved. Appellants ask that the restrictions be removed to their benefit and to the detriment of others. This, a court of equity is loath to do. The decree of the trial court is amply supported by the evidence.

Some question was raised during the argument of this case as to appellate jurisdiction. As above-stated, plaintiffs introduced evidence that they would be benefited some $70,000 if the trial court entered a decree in their favor. We held in Rombauer v. Compton Heights Christian Church, supra, that this court had appellate jurisdiction in such cases. See also Wuertenbaecher v. Feik, (Mo.), 36 S. W. (2d) 913; Hall v. Koehler, supra.

The judgment is affirmed. *Bohling* and *Barrett*, *CC.*, concur.

PER CURIAM:—The foregoing opinion by WESTHUES, C., is adopted as the opinion of the court. All the judges concur.