Fern L. EILERS, Plaintiff-Appellant,

v.

Frank H. ALEWEL et al., Defendants-Respondents.

No. 50620.

Supreme Court of Missouri,

Division No. 2.

Sept. 13, 1965.

———◆———

Forrest Boecker, John P. McCammon, St. Louis, for appellant.

Gilbert Weiss and Martin Rosenberg, St. Louis, Sanford Goffstein, St. Louis, of counsel, for respondent, Irma P. Hannegan.

Joseph A. Kirkwood, St. Louis, for respondents, Mary Purcell Kirkwood and Joseph A. Kirkwood.

David L. Millar, St. Louis, for respondents, Walter S. Haase and Dorothy Haase.

James S. McClellan, St. Louis, for respondents, Frank H. Alewel and Walter C. Haeussler, Successor Trustees, William A. Kottmeyer, Lucille K. Kottmeyer, James S. McClellan, Delphine McClellan, Walter C. Haeussler, Jane C. Haeussler, Roberts L. Prufrock, Mrs. B. H. Bristow Draper, Jr., Frank H. Alewel, Elvira Alewel, Dorothy H. Honig, George A. O'Sullivan, Marie R. O'Sullivan, Paul B. Jamieson and Harrison L. Winter, Trustees, and Mercantile Trust Co.

William M. Ward, St. Louis, for Episcopal-Presbyterian Foundation for Aging.

Roger L. Scherck, St. Louis, for respondent, Gordon Scherck, Jr.

John A. Joyce, St. Louis, for respondents, Clifford J. Brennan, Catherine P. Brennan, Rose Marie Brennan Pashos, Thomas Pashos and James Brennan.

Thos. J. Neenan, City Counselor, and Aubrey B. Hamilton, Associate City Counselor, St. Louis, for City of St. Louis.

C. C. Allen, Jr., St. Louis, for respondent, Boatmen's Nat. Bank of St. Louis.

BARRETT, Commissioner.

Mrs. Eilers, the owner of four unimproved lots in the Catlin Tract, facing Forest Park and fronting 400 feet on Lindell Boulevard with a depth of 530 feet to either the Wabash Railroad right-of-way or the Rock Island Highway, instituted this action in equity to have the restrictions in a 1908 trust indenture relating to the subdivision declared void. The Catlin Tract is 7481.9 feet long, originally there were 67 one hundred foot lots in the subdivision, and between Skinker and Union Boulevards there are 39 single-family residences, most of them occupying more than one lot. In addition to the City of St. Louis and the three successor trustees under the trust indenture the other 39 defendants are the owners of or represent other lot owners and residences in the subdivisions. Mrs. Eilers proposes to dispose of her lots to a group of people who if the restrictions are declared invalid will build a high-rise apartment in the subdivision. The city, the trustees and a large majority of the resident defendants seek to uphold and enforce the restrictions which exclude use of any part of the tract for "business or profession"

including "flats and apartments." Under the trust indenture and the restrictions construction is limited to single dwellings upon not less than 100 feet of land and costing not less than $12,500. The relief prayed by Mrs. Eilers was that the court "render its decree declaring the restrictive covenants on the use of her said property * * * to be null and void, and unenforceable." After an exhaustive hearing the court found all issues in favor of the defendants and accordingly entered a judgment dismissing the plaintiff's action and she has perfected her appeal to this court.

■ Neither the appellant's jurisdictional statement (Civil Rule 83.05(b), V.A. M.R.) nor the respondents' ill-advised motion to dismiss the appeal or their motion to transfer to an appellate court (RSMo 1959, § 477.080, V.A.M.S.) meets the standards of the rules and statutes relating to briefs or jurisdictional statements and neither party has cited a single case or other authority in support of their conflicting assertions that jurisdiction of the appeal is or is not in this court. It is not necessary here, however, to spell out all the jurisdictional problems, it has been definitely settled, contrary to the appellant's assertion, that "in an injunction suit of this nature title to real estate is not involved in the constitutional (jurisdictional) sense." Barnes v. Anchor Temple Association, Mo., 369 S.W.2d 192, 193. On the other hand, as the respondents point out, if the cause ever involved the construction of a constitution or any problem in constitutional law, it was not presented to the trial court in a motion for a new trial and therefore jurisdiction of the appeal is not properly in this court for that asserted reason. Barnes v. Anchor Temple Association, supra. There was no prayer or allegation for monetary relief, there is no issue in the case with respect to money and it is not possible that a money judgment could ever be entered or that the case would ever in fact involve an "amount in dispute" (Const.Mo. Art. 5,

Sec. 3, V.A.M.S.) within this court's monetary jurisdiction. V.A.M.S. Supp. 477.040. As a matter of fact the sole issue in this equity suit, either for an injunction or for a declaratory judgment, is the validity or invalidity of the restrictions. Emerson Electric Mfg. Co. v. City of Ferguson, Mo., 359 S.W.2d 225. Nevertheless one or more witnesses testified that the highest and best use of Mrs. Eilers' four lots, 400 front feet on Lindell Boulevard, was a high-rise apartment complex, that the value of the lots (with the restrictions) for residential use was $100 to $150 a front foot while (without the restrictions) the value of the lots for apartment-house purposes was $1000 to $1500 a front foot. And so applying what has come to be known as the four-pronged "vice versa principle" (1964 Wash.L.Q. 424, 689) the case involves a sum of money within this court's monetary jurisdiction. "There is testimony that the value of the three lots involved is over $65,000, freed of the restrictions sought to be enforced, and that with them on the land it is worth only about $13,000. This evidence and the photographs plainly show the pecuniary amount involved reaches within the jurisdiction of this court." Rombauer v. Compton Heights Christian Church, 328 Mo. 1, 11, 40 S.W.2d 545, 550; Veal v. City of St. Louis, 365 Mo. 836, 839, 289 S. W.2d 7, 9; Fleming v. Moore Bros. Realty Co., Inc., 363 Mo. 305, 308, 251 S.W.2d 8, 10; Cowherd Development Co. v. Littick, 361 Mo. 1001, 1007, 238 S.W.2d 346, 350; Hall v. Koehler, 347 Mo. 658, 660, 148 S. W.2d 489, 490; and for the history and evolution of the rule see Frank Schmidt Planing Mill Co. v. Mueller, 347 Mo. 466, 147 S.W.2d 670 and 1964 Wash.L.Q. pp. 687–704. Upon the authority of this line of cases jurisdiction of the appeal is properly in this court and the respondents' motion to dismiss or transfer the cause is overruled.

The resolution of the jurisdictional problem has the incidental effect of precisely delimiting the issues or inferentially dis-

posing of any claim of infringement of constitutional rights. The basic documents, trust indentures, plats and conveyances, in the building restriction cases, particularly in St. Louis, as well as the institution of suits to invalidate the restrictions, including the pleadings, the detailed proof and expert testimony, have become a pattern. This case follows the pattern in every respect and it is not necessary therefore to detail the evidence and set forth all the surrounding circumstances or even to note numerous small differences and carefully balance benefits to the plaintiff and detriments to the defendants resulting from enforcement or denial of enforcement of the restrictions. Annotations 54 A.L.R. 812, 813; 4 A.L.R.2d 1111. "Change of neighborhood in restricted district as affecting enforcement of restrictive covenant."

Constitutional and collateral or incidental questions aside, the appellant now asserts that the restrictions have become "inoperative and void by reason of substantial and notorious violations acquiesced in by the defendants." In this connection it is argued that the restrictions are so indefinite and uncertain as to the area included and the length of their duration as to make them ineffective. And finally, and perhaps this is the crux of her case, the appellant urges that by reason of changed conditions, particularly in the surrounding area, "the highest and best use of the appellant's property" is the construction of a high-rise apartment and, consequently it is urged that in all fairness the restrictions have become unenforceable.

At the outset it may be parenthetically observed that this particular tract of land, fronting on Lindell Boulevard ("the strip" in 1904) and facing Forest Park, is so familiar that its general appearance and character are almost matters of common knowledge. All relevant documents, including the 1908 trust indenture, and all plats of the "Catlin Tract" are set forth in such precise terms and detailed measurements that the area and its dimensions are indisputable. As to duration the indenture provided that "(t)hirty years after the date of this deed," December 18, 1908, a meeting "of the then owners" could be called and "the restrictions of any part of them" abolished by a vote of the owners of "60% of the total front feet." Except as to street dedications and some exceptions to be specifically noted, meetings of owners have been held over the years, the last time in April 1962, and in accordance with the terms of the indenture the property owners have voted to retain the restrictions.

As a matter of fact the appellant's subsidiary point as to indefiniteness as to area and duration is not urged in the conventional sense of these terms (Compare Gardner v. Maffitt, 335 Mo. 959, 74 S.W.2d 604, 95 A.L.R. 452, and Duncan v. Academy of Sisters of Sacred Heart, Mo., 350 S.W.2d 814), the argument relates to what she calls "exceptions" in the indenture and is employed to bolster the principal argument of violations acquiesced in by the defendants. As indicated, along the north or backside of the Catlin Tract is the Wabash Railroad right-of-way and for part of the length of the tract the Rock Island Highway. At the eastern end of the Catlin Tract the Wabash roadbed makes a sweeping curve to the southeast and so between Union Boulevard and Belt Avenue the six or seven lots in that area are not as deep as other lots in the subdivision's "strips," the Hoechst's easternmost lot is less than 300 feet in depth and faces a strip of ground acquired by the city for Park Street. In any event the indenture contains this sentence: "Nothing contained in this deed shall apply to any land north of the right-of-way of the said Wabash Railroad." Furthermore, on this triangular-shaped plot of ground north and east of the right-of-way is the Gatesworth Hotel (now the property of the Episcopal Presbyterian Foundation) and the Portland Garage. The land on which these structures were erected, to use the appellant's language, was deeded "by the same grantor who appears as the

grantor in the trust indenture" and since the hotel-garage deed made no reference to the Wabash right-of-way, particularly no mention that it is "north of anything" it is argued that an "exception" is created and the argument is that the exception is too vague and indefinite for recognition. In the first place the language that the deed does not apply "to any land north of the right-of-way" is so plain and unambiguous as to leave no room for doubt as to meaning or construction. And in the second place, the so-called "exception" does not purport to describe or in any manner delimit the Catlin Tract with which the case is concerned, it simply provides that "nothing contained in this deed," including the restriction, "shall apply to any land north of the right-of-way."

■■■ The appellant attempts to contend that the hotel and garage constitute "notorious violations" of the restrictions acquiesced in by the respondents but as indicated the factual basis for the argument is forced and without support in fact. However, one witness who lived in the Gatesworth Hotel before acquiring property in the Catlin Tract gave evidence from which it could be inferred that "the front porch" on the Gatesworth infringes the area and is a violation of the restrictions. It is not necessary to determine the fact of whether the porch does or does not infringe, a mere porch, even on a ten-story building, would not constitute such a violation as to invalidate the restrictions. 20 Am.Jur.2d (Covenants, Conditions, etc.) §§ 251–252, pp. 813–815; Conrad v. Boogher, 201 Mo.App. 644, 214 S.W. 211. On this point another claimed infringement is that the trustees conveyed a strip of the subdivision to the City of St. Louis "for park purposes * * and then permitted, without objection, the conversion of said strip to other use, to wit, as a street." This claim arises in the fact that on December 6, 1909, the three original trustees, including Daniel K. Catlin, conveyed a fifty-foot strip alongside Lindell to the city "for the purpose of widening the roadway for public traffic" upon the recit-

ed representation that "it would be used only for park purposes in the manner hereinafter limited." In the first place, as pointed out in the Rombauer case, the plaintiff and her husband came into the ownership of their lots long after the conveyance of the strip, the conveyance having been made and acquiesced in by their predecessors in title. But more to the point is the observation that "(t)here is no evidence that the tone of the neighborhood has been lowered and none that the seclusion of the residents has been sacrificed because of the change in the method of maintaining the park strips (there the Grand Boulevard-Flora Place area in 1931). There is no law, so far as we know, that a restrictive agreement cannot be enforced because the land covered by it abuts on a *public* street. Every reason that ever existed for the enforcement of the restrictions exists now—so far as concerns the particular phase of the case under discussion." Rombauer v. Compton Heights Christian Church, 328 Mo. 1. c. 16, 40 S.W.2d 1. c. 552. While somewhat collateral perhaps to the central problem of this appeal there is inferential significance in the fact that two of the respondents here, the Kirkwoods, attempted unsuccessfully to enjoin the city from occupying and constructing a four-lane highway on approximately six acres in the northeast corner of Forest Park. Kirkwood v. City of St. Louis, Mo., 351 S.W.2d 781.

■ Closely related to this second claimed violation is the contention that the conveyance by the trustees in 1929 to the city of two strips 150 feet by 550 feet on each side of De Baliviere at Lindell "for park purposes" was also a violation. No more is shown or pointed to than the mere fact of the conveyance and it should follow as a matter of course that if the conveyance of a fifty-foot strip for street purposes is not such a "notorious violation" as to invalidate the restrictions, a transfer of these two plots to become a part of Forest Park would not constitute a serious or substantial infringement of the original trust indenture.

■ The fourth matter relied on as a contributing infringement is stated in the appellant's brief to be "when the South half of the lot on the corner of Lindell and Skinker was conveyed and a residence constructed on it, the grantor retaining the North half fronting only on Skinker * * leaving it available for future building." This is the only reference in the brief to this particular matter, it is not spelled out just how this transaction substantially infringes the restrictions. The appellant refers no doubt to the trust provision "Nor build more than one dwelling house upon any parcel of land containing less than one hundred contiguous feet fronting said South Strip." As the respondents say, at least up to the present, "(t)here is only one home on the lot" and it meets the requirements of the indenture.

It may be that too much attention has been devoted to the claim of acquiesced in violations because even in its totality it is as a matter of fact an integral part of the appellant's principal claim of such changed conditions as to render the restrictions unenforceable. The totally asserted violations do point up and are relevant to the principal claim in that they are the only physical changes within the "Catlin Tract" as it was developed in accordance with the terms of the trust indenture over the years. Thus the case is unlike those instances in which from the outset violations of the covenants were not only acquiesced in by the residents of the Jefferson-Shenandoah Avenue area but the owner-grantor participated in and was a party to the infringements. In those instances of course relief was denied by reason of "abandonment and acquiescence, brought about or participated in by those who are seeking to enforce the covenant." Scharer v. Pantler, 127 Mo.App. 433, 437, 105 S.W. 668, 669. Further discriminating in passing, there is an analogy in the zoning cases cited by the appellant (Huttig v. City of Richmond Heights, Mo., 372 S.W.2d 833), nevertheless the zoning ordinance cases involve "arbitrary and unreasonable action based on the police power of the state" (Matthews v. First Christian Church, 355 Mo. 627, 633–634, 197 S.W.2d 617, 621) and "a valid restriction upon the use of property is not terminated, superseded, or nullified by the enactment of a zoning ordinance, nor is the validity of the restriction thereby affected. Zoning ordinances if less stringent do not diminish the legal effect of private building restrictions, and the rezoning of property for purposes other than residential does not supersede the original plat restrictions so as to prevent the enforcement of such restrictions." 20 Am.Jur.2d (Covenants, Conditions, etc.) § 277, pp. 837–838.

■ The changes in the areas far and near, as with the Catlin area itself, are all but matters in the realm of common knowledge. But as stated, the proof in this case follows a well established pattern and it is not necessary to detail all the circumstances here. In addition to the matters inside the area alleged as direct violations of the restrictions there was proof of numerous, even vast changes in the surrounding area. Apartment houses and complexes of various types have been constructed, as well as motels, and there has been some commercial development. And of course there has been a great increase in traffic on Lindell as well as on all other streets but increased traffic on area streets does not in fact destroy the residential character of the Catlin subdivision. Barnes v. Anchor Temple Association, Mo.App., 369 S.W.2d 893. As in many of the cases there was proof that the highest and best use at least of the appellant's four lots, if not of large sections of the entire tract, was a high-rise apartment complex. There was some proof that these four lots and inferentially other lots were of ten times greater value as apartment locations than as a preserved residential area but it has been repeatedly stated or recognized in all the cases that "greater commercial value is not alone sufficient cause to nullify the restrictions." Jones v. Eilenstine, Mo.App., 369 S.W.2d 278, 284; Veal v. City of St. Louis, 365 Mo. 836, 289 S.W.2d 7.

The case follows the pattern in all respects and it is not necessary to detail the facts. A case illustrative of subsequent events and changed conditions within and without the area so radical as to make enforcement of restrictions inequitable is Mathews Real Estate Co. v. National Printing & Engraving Co., 330 Mo. 190, 48 S.W. 2d 911, 81 A.L.R. 1039, dealing in 1931 with the single block bounded by Sarah and Boyle Streets east and west and Laclede and West Pine north and south. But the circumstances of this record are in nowise comparable to the changes detailed in that case, there it could be said that over the years the area changes were so radical "that enforcement would not tend to, or have any effect toward, the carrying out of the original purpose for which the restriction was imposed." Annotation 54 A.L.R. 812, 813. Here rather, without analyzing and demonstrating in detail, it may be said of this area as the court said of Vandeventer Place in 1928, "notwithstanding the assaults of commercial business upon the surrounding neighborhood, the evidence as a whole rather tends to show that Vandeventer Place itself has successfully withstood the advance of the commercial army, and has so far maintained its exclusive character as a single family residential district of the highest class." Pierce v. St. Louis Union Trust Co., 311 Mo. 262, 296, 278 S.W. 398, 408. In short upon this record and in these present circumstances the case falls within a long list of cases headed by the Pierce case and its companion Pierce v. Harper, 311 Mo. 301, 278 S.W. 410; Barnes v. Anchor Temple Association, supra; Matthews v. First Christian Church, supra, dealing with the nearby area of Taylor-Euclid-Maryland-Lindell; Hall v. Koehler, 347 Mo. 658, 148 S.W.2d 489, and Cowherd Development Co. v. Littick, 361 Mo. 1001, 238 S.W.2d 346, both concerned with Hinkle Place in Kansas City, and finally Miller v. Klein, 177 Mo. App. 557, 160 S.W. 562, concerned in 1913 with an area bounded north and south by Delmar Avenue and a railroad track and east and west by another railroad right-of-way and the Des Peres River. Unless un-

enforceable by reason of radical changes in the area or acquiesced in violations, the construction of a high-rise apartment in the area would admittedly violate the restrictions (Godfrey v. Hampton, 148 Mo.App. 157, 127 S.W. 626; 20 Am.Jur.2d § 214, p. 782), and since for the indicated reasons the appellant's present claims of invalidity are insufficient the judgment is affirmed.

STOCKARD and PRITCHARD, CC., concur.

PER CURIAM.

The foregoing opinion by BARRETT, C., is adopted as the opinion of the court.

All of the Judges concur.