549 A.2d 774

**Edmund JASKIEWICZ, et al.**

v.

**Samuel A. WALTON, et al.**

**No. 206, Sept. Term, 1988.**

Court of Special Appeals of Maryland.

Nov. 7, 1988.

Frank B. Haskell, III (Haskell, Duley & Gale, on the brief), Upper Marlboro, for appellants.

William E. Knight (Stuart R. Hammett and Knight, Manzi, Brennan, Ostrom & Ham, on the brief), Upper Marlboro, for appellees, Samuel and Helen Walton.

Elizabeth M. Hewlett (Ronald D. Schiff and D.S. Sastri, on the brief), Upper Marlboro, for appellee, MNCP & PC.

Argued before MOYLAN, WENNER and POLLITT, JJ.

POLLITT, Judge.

The principal question presented in this case is whether an amendment to a Declaration of Covenants must apply uniformly to all lots in the subdivision covered by the covenants. We shall answer the question affirmatively, thus reversing the judgment of the Circuit Court for Prince George's County.

Appellants, Edmund Jaskiewicz and others, are lot owners and residents in Brock Hall subdivision, located in Marlboro District of Prince George's County. Plats one and two of that subdivision, consisting of forty-five "estate lots" ranging in size from three to seven acres each, are subject to a Declaration of Covenants, dated 18 March 1953, recorded among the Land Records of Prince George's County, containing the following pertinent provisions:

13. RESUBDIVISION. There shall be no further subdivision of lots in this tract.

14. TERM. These covenants are to run with the land and shall be binding on all parties and all persons claiming under them for a period of twenty-five years from the date these covenants are recorded, after which time said covenants shall be automatically extended for successive periods of ten years unless an instrument signed by a majority of the then owners of the lots has been recorded, agreeing to change said covenants in whole or in part.

Appellees, Samuel and Helen Walton, own and reside on lot 26 of plat two, containing approximately four acres. A ravine runs through the center of the lot, causing a natural separation into two parcels of approximately two acres

each. Seeking to subdivide their lot along that natural divider, the Waltons recorded an Amended Declaration of Covenants, dated 6 June 1985, and signed by 23 of the 45 lot owners in the subdivision, by which paragraph 13 was amended to read:

Paragraph 13. RESUBDIVISION. Except for Lot 26, Plat Two as shown of [sic] the Plat of Subdivision, there shall be no further subdivision of lots in this tract. Lot 26, Plat Two shall not be resubdivided into more than two lots.

The Waltons presented a preliminary subdivision plat to the Prince George's County Planning Board of The Maryland–National Capital Park and Planning Commission for its approval. The Board approved the plan subject to approval of a Conceptual Storm Water Management Plan before final plat approval. Jaskiewicz et al. appealed this decision to the Circuit Court for Prince George's County (CAL 86–03845).

Appellants then filed a declaratory judgment action (CAE 86–09019) asking that the court declare the purported amended covenant void, and seeking to enjoin the Waltons and the Board from taking any further action toward approval of the resubdivision. The cases were consolidated and, after a hearing, the circuit court entered judgment in favor of the Waltons. On appeal, being unable to determine from the record precisely what the trial court had ruled, we vacated the judgment and remanded the case for the trial court to "(1) declare the rights of the parties with respect to the issues raised in the declaratory judgment action and (2) make clear its decision and enter a proper judgment in the administrative appeal." *Jaskiewicz v. Walton* [No. 203, 1987 Term, per curiam, filed Oct. 30, 1987]. On remand, the circuit court declared the amended declaration of covenants is "valid and enforceable," denied the request for injunction against the Waltons, and dismissed the appeal from the Planning Board. This appeal followed.

Appellee, The Maryland–National Capital Park and Planning Commission, citing *Chayt v. Maryland Jockey Club*,

179 Md. 390, 18 A.2d 856 (1941), and other cases, asserts it is not concerned with the enforcement of private covenants and has no interest in the results of this case. All the other parties agree and so do we. That part of the judgment dismissing the appeal from the action of the Board is affirmed.

Another issue before the trial court, and briefed in this Court, was whether the amendment was "premature," because, by the specific terms of the Declaration of Covenants, amendments could be made only at ten-year intervals after the expiration of the initial twenty-five years in 1978. All parties conceded at oral argument that issue is now moot. This brings us to the real question in the case.

Appellees assert that Maryland law is clear that any doubt as to the validity of a restrictive covenant, or an amendment thereto, is to be resolved against the restriction. Because public policy favors the free and unrestricted use of land, covenants are strictly construed against any limitations on such use. They cite, among others, *Metius v. Julio*, 27 Md.App. 491, 342 A.2d 348, *cert. denied*, 276 Md. 747 (1975). They posit, therefore, that since the covenant is ambiguous, it must be construed strictly against the party seeking to enforce it. We have no disagreement with the proposition of law, but the factual premise is absent. We perceive no ambiguity in the restriction. Covenant 13 clearly states "[t]here shall be no further subdivision of lots in this tract." That restriction can be changed, as provided in paragraph 14, by the recording of an instrument "signed by a majority of the then owners of the lots ... agreeing to change said covenants in whole or in part." We have been referred to no Maryland appellate decision construing such language. We think the same language was construed correctly in *Montoya v. Barreras*, 81 N.M. 749, 473 P.2d 363, 365 (1970), where the Supreme Court of New Mexico said:

Examination of the entire declaration reveals that the original restrictions were clearly imposed on all of the described property. The declaration describes the proper-

ty and is then followed by the granting clause which declares that all of the property shall be encumbered by the restrictions. Following this granting clause, twelve paragraphs of restrictive covenants are listed, including the provision in covenant (X) that they may be changed in whole or in part. The phrase "in whole or in part" in covenant (X) clearly modifies the words "to change," and the direct object of "to change" is the word "covenants," not the word "lots." Thus, the covenants may be changed in whole or in part, but we cannot construe this language as permitting any such change or changes to apply to only a portion of the lots on which the restrictions were imposed. Nor is there anything in the covenants themselves which can be construed as either expressly or impliedly modifying or changing the granting clause itself, which expresses the intent and purpose that all of the described property is encumbered by the restrictions, whether they remain as originally stated or are subsequently changed in whole or in part. The original restrictions were clearly imposed on all of the described property, and though the restrictions themselves may be changed in whole or in part, the change or changes which might be made must affect all of the described property.

The Court of Appeals of Arizona, in *Riley v. Boyle*, 6 Ariz.App. 523, 434 P.2d 525, 527 (1967) (*quoting* Annot., 4 A.L.R.3d 582 (1965)), said:

"It would appear that any action taken by property owners to alter, extend, or revoke existing restrictions must apply to all of the properties which are subject to them. In one case the court held invalid an attempt to retain restrictions as to part of a subdivision while releasing them as to another part."

The Arizona court agreed, observing that any other interpretation would mean that 51% of the owners could completely except their own property from the restrictions while leaving the other 49% encumbered, or could even impose more strict restrictions upon certain lots. The Court said:

Certainly such an interpretation could easily result in a patchwork quilt of different restrictions according to the views of various groups of 51 per cent and completely upset the orderly plan of the subdivision.

*Id.* 434 P.2d at 528.

Cases in accord include *Ardmore Park Subdivision Assoc., Inc. v. Simon,* 117 Mich.App. 57, 323 N.W.2d 591 (1982); *Cowherd Development Co. v. Littick,* 361 Mo. 1001, 238 S.W.2d 346 (Mo.1951); *Zent v. Murrow,* 476 S.W.2d 875 (Tex.Civ.App.1972). We have been referred to no cases holding to the contrary. The cases relied upon by appellees are inapposite.

Appellees rely on *Stauber v. Granger,* 495 P.2d 67 (Alaska 1972). They state correctly that the Alaska court invalidated an attempted release of restrictions as to one lot because the appellant had not obtained the necessary signatures, but there is absolutely no support in that opinion for appellees' further assertion that "[h]ad the [a]ppellant obtained the necessary signatures . . . such a release as to one lot would have been valid." The court simply did not reach that issue. Similarly, in *Bruce v. Simonson Investments, Inc.,* 251 La. 893, 207 So.2d 360 (1968), the attempted release was voided for other reasons, but the court did *not* say, as asserted by appellees, that "had the [a]ppellant followed the proper procedure, such amendment releasing the restriction as to two lots only would have been valid." Nothing in the opinion of the Louisiana court supports that assertion.

*Weinstein v. Swartz,* 3 N.J. 80, 68 A.2d 865 (1949), simply held that a conditional release of the covenants as to one lot in a neighborhood did not constitute an abandonment of the neighborhood scheme. *Cree Meadows, Inc. (NSL) v. Palmer,* 68 N.M. 479, 362 P.2d 1007 (1961), deals with whether the provisions in the original agreement by which restrictions could be released applied to a golf course, the court holding they did not.

We find no support for appellees' position in any of the cases upon which they rely.

We hold that any amendments to the covenants in this case, adopted pursuant to paragraph 14 of the Declaration of Covenants, must apply uniformly to all of the lots covered by the Declaration.

JUDGMENT DISMISSING THE APPEAL FROM THE MNCP & PC AFFIRMED; JUDGMENT DECLARING THE AMENDED DECLARATION OF COVENANTS VALID AND ENFORCEABLE REVERSED; CASE REMANDED WITH DIRECTION TO ENTER DECLARATORY JUDGMENT CONFORMING HEREWITH, APPELLEES WALTON TO PAY THE COSTS.