563 A.2d 382

Samuel A. WALTON et al.

v.

Edmund JASKIEWICZ et al.

No. 133, Sept. Term, 1988.

Court of Appeals of Maryland.

Sept. 11, 1989.

Martin J. Shuham and William E. Knight (Knight, Manzi, Brennan, Ostrom & Ham, on brief), Upper Marlboro, for petitioners.

Frank B. Haskell, III, Upper Marlboro, for respondents.

Argued before MURPHY, C.J., and ELDRIDGE, COLE, RODOWSKY, McAULIFFE, ADKINS and BLACKWELL, JJ.

MURPHY, Chief Judge.

The question presented is whether a majority of property owners in a residential subdivision may amend a Declaration of Covenants to exempt one lot from a restriction against further subdivision or whether the amendment is invalid because it does not apply uniformly to all lots burdened by the restrictive covenants.

## I.

The parties in this case are lot owners and residents of the Brock Hall subdivision, located in the Marlboro District of Prince George's County. Plats 1 and 2 of the subdivision consist of forty-five "estate lots" ranging in size from three to seven acres each, all of which are subject to a Declaration of Covenants dated March 18, 1953, recorded among the Land Records of Prince George's County. The introductory paragraphs of the Declaration set forth several purposes for the covenants. They include to protect the lot purchasers from depreciation in value of their lots, to assure them of uniformity of development of the surrounding property, to facilitate the sale of the lots by the original owner, and "to make certain that said restrictions shall apply uniformly to all the lots in said subdivision to the mutual advantage of the present owner of said lots and to all who may in the future claim title through said present owner." The Declaration's subsequent paragraphs provide in relevant part:

13. RESUBDIVISION. There shall be no further subdivision of lots in this tract.

14. TERM. These covenants are to run with the land and shall be binding on all parties and all persons claiming under them for a period of twenty-five years from the date these covenants are recorded, after which time said covenants shall be automatically extended for successive

periods of ten years unless an instrument signed by a majority of the then owners of the lots has been recorded, agreeing to change said covenants in whole or in part.

Samuel and Helen Walton own and reside on lot 26 of Plat 2 of the subdivision. Their lot, containing approximately four acres, is the smallest lot in Plat 2. A ravine runs through the center of the lot, causing a natural separation into two parcels of land, containing approximately two acres each. The Waltons sought to subdivide their lot along the ravine. They obtained the signatures of a majority of the lot owners in the subdivision on an instrument entitled "Amended Declaration of Covenants" which purported to amend paragraph 13 of the original Declaration to read:

Paragraph 13. RESUBDIVISON. Except for Lot 26, Plat Two as shown on the Plat of Subdivision, there shall be no further subdivision of lots in this tract. Lot 26, Plat Two shall not be resubdivided into more than two lots.

The Waltons recorded this instrument, which was dated June 6, 1985, among the Land Records of Prince George's County.

Subsequently, Edmund Jaskiewicz and other lot owners in the subdivision, filed a declaratory judgment action in the Circuit Court for Prince George's County; they sought a declaration that the amendment to paragraph 13 was void and an injunction prohibiting the Waltons from pursuing a resubdivision of lot 26. The circuit court (Ahalt, J.), in a written opinion and order, declared that the amendment was in conformity with the prescribed procedure for amending the Declaration of Covenants. It said that the "Amended Declaration which authorizes a resubdivision as to Lot 26 is valid under Paragraph 14 of the original Declaration which authorizes an amendment to a *part* of the Declaration." (Emphasis in original.) Accordingly, the court entered a declaratory judgment in favor of the Waltons.

Jaskiewicz appealed to the Court of Special Appeals which reversed the judgment. *Jaskiewicz v. Walton,* 77 Md.App. 170, 549 A.2d 774 (1988). The intermediate appellate court, citing authority from other jurisdictions, concluded that "any amendments to the covenants in this case, adopted pursuant to paragraph 14 of the Declaration of Covenants, must apply uniformly to all of the lots covered by the Declaration." *Id.* at 176, 549 A.2d 774. Because the purported amendment permitted subdivision of lot 26, but not of the remaining lots, the court held that the amendment lacked the requisite uniformity and thus was invalid. *Id.* at 174–77, 549 A.2d 774. We granted certiorari to consider the important issue raised in the case.

II.

The parties acknowledge that there is no Maryland case law addressing the specific issue of whether a declaration of restrictive covenants burdening lots in a residential subdivision must apply uniformly to all lots subject to the covenants absent specific authorization in the declaration. The Waltons nevertheless rely upon *Matthews v. Kernewood, Inc.,* 184 Md. 297, 40 A.2d 522 (1945) and *Martin v. Weinberg,* 205 Md. 519, 109 A.2d 576 (1954) as persuasive authority for the proposition that covenants may be amended to release a single lot from the restrictions imposed on the subdivision as a whole. These cases, however, are distinguishable from the present case. In *Matthews,* we held that "[o]ne who conveys a part of a tract of land by deed containing restrictive covenants may reserve to himself the power to modify or omit these restrictions altogether" with respect to lots subsequently conveyed. 184 Md. at 307, 40 A.2d 522. Because the declaration of covenants in *Matthews* contained a reservation of the type described, that case is not dispositive of the present issue.

*Martin* involved the issue of whether restrictive covenants, which were incorporated into the deeds of some lots within a subdivision, but not into the deeds of other lots, were effective to bind the owners of the lots so burdened.

We found that "the fact that a few lots in the tract are unrestricted would not necessarily negative an intention to restrict the lots designated in accordance with a general plan ..., particularly where there is a rational basis for a distinction, or where other owners are not parties to the plan." 205 Md. at 525, 109 A.2d 576. *Martin* did not, therefore, involve, as here, an amendment to existing covenants and thus is not determinative of whether a covenant restricting subdivision of all lots within a residential development can be amended by a majority of the lot owners to release a single lot from its restriction.

The Waltons also contend that public policy favors the free and unrestricted use of land, and thus requires that the Declaration of Covenants be construed as permitting the proposed amendment. They note that " 'where the language employed to express a restrictive covenant so far involves a doubt as to require construction, the rule is that such covenants are to "be strictly construed against the person seeking to enforce them," and that "all doubts must be resolved in favor of natural rights and a free use of the property." ' " *Harbor View Imp. Ass'n. v. Downey*, 270 Md. 365, 371, 311 A.2d 422 (1973), *quoting, Bartell v. Senger*, 160 Md. 685, 693, 155 A. 174 (1931). While this rule may constitute a correct general statement of law, it is not applicable in the circumstances of this case as the language of the Declaration of Covenants plainly does not permit the amendment here involved.

Courts in other jurisdictions, construing similar language, have held that it is not ambiguous and that an amendment must apply uniformly to all lots subject to the restrictions. Thus, these courts have concluded that an attempt to exempt some lots from a restriction while retaining it as to others is invalid. *See, e.g., Camelback Del Este Homeowners v. Warner*, 156 Ariz. 21, 749 P.2d 930, 936 (1987) (noting that "unless otherwise provided for in the restrictions themselves, any amendment to restrictive covenants must apply to every lot"); *La Esperanza Townhome v. Title Sec. Agency*, 142 Ariz. 235, 689 P.2d 178, 182 (1984)

(finding that the rule that an amended covenant must apply uniformly to all lots within a subdivision is the controlling law even when the proposed amendment seeks to release a few lots from all of the covenants as opposed to only a few of the restrictions); *Riley v. Boyle,* 6 Ariz.App. 523, 434 P.2d 525, 528 (1967) (finding that "[t]he restrictions imposed pertain to *all* lots in the subdivision and a fair construction of the words permitting amendments indicate[s] that the power to amend is only as to restrictions for all lots in the subdivision") (emphasis in original); *Lakeshore Estates Recreational Area, Inc. v. Turner,* 481 S.W.2d 572, 574 (Mo.App.1972) (finding that a proposed amendment to a restrictive covenant was ineffective to "release a single lot when the restrictions apply to a tract or parcel or block consisting of several lots"); *Cowherd Development Co. v. Littick,* 361 Mo. 1001, 238 S.W.2d 346, 349 (1951) (holding that the amendment procedure contained in a declaration of covenants did not authorize the majority of owners to extend the restrictions as to part of the lots and to release them as to others); *Ridge Park Home Owners v. Pena,* 88 N.M. 563, 544 P.2d 278 (1975) (holding that "[n]o changes may be made with respect to any one lot without affecting all the others subject to the restrictions"); *Zent v. Murrow,* 476 S.W.2d 875, 878 (Tex.Civ.App.1972) (rejecting any rule which "would permit the majority of the lot owners to alter or revoke the restrictions as to a few lots only, and to continue the covenants as to all other property in the section" because such a rule would result in uncertainties and possible discrimination). *See also McMillan v. Iserman,* 120 Mich.App. 785, 327 N.W.2d 559, 561 (1982) (recognizing the principle that "land use covenants containing restrictions such as reciprocal negative easements may include a clause giving the grantees or lot owners the power to amend, modify, extend or revoke the restrictions and that any such action taken by the property owners applies to all of the properties which are subject to the restrictions"); *Ardmore Park Subdivision Assoc., Inc. v. Simon,* 117 Mich.App. 57, 323 N.W.2d 591, 593 (1982) (finding that any

change to restrictions embodied in the original covenant must operate to bind all owners of property subject to the covenant). *Compare Steve Vogli & Co. v. Lane,* 405 S.W.2d 885, 889–90 (Mo.1966) (upholding an amendment to covenants providing separate restrictions as to five lots within a subdivision when *all* lot owners, rather than the seventy-five percent required by the amendment provision, approved the exemption), and *Warren v. Del Pizzo,* 46 Or.App. 153, 611 P.2d 309 (1980) (upholding an amendment to covenants where the amendment applied uniformly to all lots).

In *Montoya v. Barreras,* 81 N.M. 749, 473 P.2d 363 (1970), the Supreme Court of New Mexico examined covenant language almost identical to that used in paragraph 14 of the Brock Hall covenants.[1] The court noted that "the original restrictions were clearly imposed on all of the described property" and that the granting clause declared that "all of the property shall be encumbered by the restrictions." 473 P.2d at 365. It then stated:

Following this granting clause, twelve paragraphs of restrictive covenants are listed, including the provision in covenant (X) that they may be changed in whole or in part. The phrase "in whole or in part" in covenant (X) clearly modifies the words "to change," and the direct object of "to change" is the word "covenants," not the word "lots." Thus, the covenants may be changed in whole or in part, but we cannot construe this language as permitting any such change or changes to apply to only a portion of the lots on which the restrictions were imposed. Nor is there anything in the covenants themselves which can be construed as either expressly or impliedly modify-

---

1. Specifically, the covenant at issue in *Montoya* provided:
    These covenants are to run with the land and shall be binding on all the parties and all persons claiming under them until January 1, 1966, at which time said covenants shall be automatically extended for successive periods of ten (10) years unless by a vote of the majority of the then owners of the lots it is agreed to change the said covenants in whole or in part.

ing or changing the granting clause itself, which express-
es the intent and purpose that all of the described proper-
ty is encumbered by the restrictions, whether they remain
as originally stated or are subsequently changed in whole
or in part. The original restrictions were clearly imposed
on all of the described property, and though the restric-
tions themselves may be changed in whole or in part, the
change or changes which might be made must affect all
of the described property. *Id.*

We agree with the principles so well articulated in *Monto-
ya.* Moreover, as a number of courts have noted, property
owners expect that covenants will be enforced uniformly
and that owners will enjoy a degree of mutuality under the
restrictions. *See, e.g., Lakeshore, supra,* 481 S.W.2d at 575
(noting that "[p]ersons who purchase lots in a subdivision
subject to such use and occupancy restrictions do so upon
the expectation of a benefit as well as the obvious burden or
obligation of compliance"; and that "[t]hey expect the pro-
tection that compliance on the part of the rest of the lot
owners affords them and absent their consent, they may
not continue to be burdened when others are relieved"
unless the modification applies uniformly to all lots); *Cow-
herd, supra,* 238 S.W.2d at 348 (noting that a prospective
purchaser, when reading the restrictive covenants, would
not expect "that the owners of a majority of ... [the lots] in
the subdivision would have the power to release the lots
adjoining his lot from the restrictions and continue them as
to others"); *Montoya, supra,* 473 P.2d at 365 (noting that
traditionally, "restrictive covenants have been used to as-
sure uniformity of development and use of a residential
area to give the owners of lots within such an area some
degree of environmental stability"). Consequently, "[t]o
permit individual lots within an area to be relieved of the
burden of such covenants, in the absence of a clear expres-
sion in the instrument so providing, would destroy the right
to rely on restrictive covenants which has traditionally been
upheld by our law of real property." *Id.* at 365.

In addition, to allow a majority of lot owners to exempt one or more lots from a restrictive covenant, absent explicit language permitting the exemption, could have serious consequences for lot owners in the minority. For example, in *Ridge Park, supra,* a majority of lot owners approved an amendment removing residential restrictions on a few lots within the subdivision, despite the objection of a minority of lot owners whose property was located nearest to the proposed commercial development. The court held the amendment invalid for lack of uniformity noting that "[t]he mutuality of restrictive covenants would be destroyed if we were to allow the majority of owners, who might not be adversely affected because of their insulated location in the subdivision, to authorize offensive consequences for the minority of owners by removing or imposing restrictions only on certain lots within the minority's area." 544 P.2d at 280. As the court explained in *Riley v. Boyle, supra,*

Taking these words to mean that particular lots could be excepted permits the obviously unintended result that 51 per cent of the owners could exempt their own property and leave the other 49 per cent encumbered or could even impose more strict restrictions upon certain lots. Certainly such an interpretation could easily result in a patchwork quilt of different restrictions according to the views of various groups of 51 per cent and completely upset the orderly plan of the subdivision. 434 P.2d at 528.

In the present case, the statement of purpose contained in the Declaration of Covenants governing the Brock Hall subdivision expresses an intent that the covenants apply uniformly to all lots within the subdivision. The amendment provision contained in paragraph 14, like the provisions in *Montoya* and the other cases cited above, provides for changing the covenants in whole or in part; it does not indicate that changes can be made selectively to exempt a single lot from a particular restriction, but rather that the amendment must apply uniformly to all lots subject to the covenant. Therefore, the purported amendment in this case

to paragraph 13, releasing lot 26 from the restriction against further subdivision, is not authorized by the declaration of covenants and is invalid.

JUDGMENT AFFIRMED, WITH COSTS.